2012 Ark. App. 534

**Claude C. SMITH, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–1133.**

Court of Appeals of Arkansas.

Sept. 26, 2012.

Rehearing Denied Oct. 31, 2012.

Jason Horton Law Firm, by: Jason Horton, Texarkana, for appellant.

Dustin McDaniel, Att'y Gen., by: Rachel H. Kemp, Ass't Att'y Gen., for appellee.

DOUG MARTIN, Judge.

A Miller County jury found appellant Claude Smith guilty of aggravated robbery, and he was sentenced to thirty years' imprisonment. Smith argues that the trial court erred in denying his motion for directed verdict because, aside from the testimony of accomplices, there is no evidence that tends to connect him to the aggravated robbery. Smith also argues that the trial court erred in denying his motion for mistrial after an accomplice twice revealed that Smith had a prior robbery conviction. We affirm.

Steven Browning worked as an attendant/security guard at Game Central Arcade on May 14, 2010. Browning stated that a black man, approximately 5'9" or 5'10", came into the arcade and walked straight past him. Browning stopped the man and asked whether he was a member of the arcade. The man responded that he was not and asked whether he could use the restroom, to which Browning said, "No." The man then asked Browning whether he could have a soda, and Browning again refused the man's request and asked him to leave. Browning testified that, as he was escorting the man out of the arcade, "the next thing I knew there was a barrel pointed at my head." Two other men entered the arcade. Browning dropped to his knees and offered one of the robbers his keys and a money bag. Browning was ordered to unlock the safe at the back of the arcade. Because he was nervous, Browning had trouble opening the safe. The robber who had the gun pointed at him "tapped [him] on the back of [his] head with the barrel of the gun." Browning eventually opened the safe, and the robbers fled with approximately $1,300 in cash from the safe, $600 in "playbacks," and approximately $700 from Browning's wallet. Browning testified that he did not see the robbers' faces.

Carolina Moore and Melissa Nash were also present at the arcade that night. Nash testified that, as a man was being escorted out of the arcade, another man came in with a gun and yelled for everybody to "get down." Nash further testified that one of the robbers pointed a gun at her and that she threw her money onto the floor. Neither Moore nor Nash saw the robbers' faces.

Sergeant Bobby Jordan with the Texarkana Police Department testified that a surveillance video depicted three black men robbing Game Central Arcade. Four days after that robbery, a second robbery occurred at another arcade located on State Line Avenue. Officers apprehended a suspect in the second robbery, Sheridan Garner, who gave the police names of others who had participated in the second robbery. Garner named Felisha Shelton, Michael Gamble, "J.T.," "Little George," and David Anthony Harris. Jordan testified that officers did not locate anyone named "J.T."; however, they did find Shelton. Shelton identified Gamble and "E.T." as having robbed Game Central Arcade. Shelton told Jordan that she did not know "E.T."'s name but that he drove a tan Chevrolet Blazer, lived near the entrance of Griff King Courts, and had a pregnant girlfriend. Within a short time, another officer located "an 'E.T.' who matched the description of the person we were looking at in the Game Central video," Jordan testified.

An arrest warrant was obtained for Gamble and, during a police interview, Gamble confessed to having participated in the Game Central robbery and identified "E.T." and Harris as the other robbers. Gamble did not know "E.T."'s name but identified him from a photograph of appellant Claude Smith. Smith was then arrested. According to Jordan, Gamble matched the description of the first robber in the video, and Smith matched the description of the second robber. Jordan noted that, from the surveillance video, Smith appeared to be short, in comparison to the height of the machines in the arcade. Harris was subsequently arrested, and he identified Gamble and "E.T." as participants in the robbery of Game Central Arcade. According to Harris, "E.T." supplied the guns and, during the robbery, took Browning to the back of the arcade at gunpoint. Harris also told Jordan that, following the robbery, the three men ran toward a getaway vehicle driven by "E.T."'s girlfriend, Santana Riley. Jordan located Riley at an apartment at Griff King Courts. A tan Chevrolet Blazer was parked in front of the apartment. Riley admitted that she was Smith's girlfriend and was pregnant. When asked by Jordan whether Smith had access to the tan Blazer on the night of the Game Central robbery, "[Riley] said that [Smith] frequently borrowed that vehicle to go to the clubs."

Harris, Gamble, and Shelton testified for the prosecution at trial. All three witnesses identified Smith at the defense table and testified that he was the man they knew and referred to as "E.T."

Harris, an accomplice, testified that, on the night of the Game Central robbery, he was picked up in a tan sports utility vehicle by Gamble, Smith, and Smith's girlfriend. According to Harris, Gamble gave him a BB gun, and Smith had a gun as well. Harris identified Smith in the surveillance video as the robber who took the money bag from Browning.

Gamble, also an accomplice, gave conflicting accounts of what he told officers at the time of his arrest. Gamble testified that he told the arresting officers that Harris and Smith robbed Game Central Arcade with him. Gamble told the arresting officers that he rode in a brown [Ford] Expedition to and from the robbery and

that he "guessed" the vehicle belonged to Smith's girlfriend. At trial, however, Gamble testified that his ex-girlfriend, Amanda Madson, dropped him off "at the corner" before the robbery at Game Central Arcade occurred. Gamble claimed that Harris was in the vehicle with them, along with a third man that he refused to identify. In viewing the surveillance video, Gamble identified himself and Harris but would not identify the third robber. Gamble was declared a hostile witness, and the court found him in contempt.

Defense counsel introduced a statement dated on or about October 26, 2010, which was signed by Gamble: "I'm writing this correction to let the DA and judge know that Claude Smith did not have anything to do with this robbery[.] They arrested the wrong guy[.] The only reason I agreed to it being him is so that the right guy could get away[.]" At trial, Gamble initially insisted that he wrote the statement himself, but he later testified that Harris wrote the statement for him, a claim that Harris denied when he was recalled to the stand. Gamble then testified that Smith had nothing to do with the Game Central robbery.

Felisha Shelton[1] testified that, prior to the robbery at State Line Avenue, Gamble told her that he was with "Budda" and Smith when they "hit a lick." Shelton denied saying that Smith had been to her house but admitted that she knew Smith's girlfriend was pregnant. Shelton did not recall an earlier statement she had made indicating that "[Smith's girlfriend] she's pregnant so she must be the one driving that night." Shelton testified that she saw a tan four-door Blazer that Smith's girlfriend drove parked at a neighbor's house and that her neighbor was Gamble's girlfriend. Shelton testified that she told De-

tective Moody that Smith was short and had braids.

Detective Les Moody with the Texarkana Police Department testified that he interviewed Gamble at the time of his arrest. According to Moody, Gamble had told him that Smith planned the robbery and supplied the guns and that Smith's girlfriend drove the getaway vehicle. Moody testified that, although Gamble contradicted himself during the interview, Gamble consistently maintained throughout the interview that he robbed Game Central Arcade with Smith and Harris.

Smith moved for a directed verdict, arguing that there was insufficient evidence to prove his participation because the only evidence that put him at the robbery of Game Central Arcade came from accomplices and hearsay testimony. Smith maintained that Shelton had no firsthand knowledge and could only repeat what a codefendant had told her and that codefendant corroboration is insufficient. Smith contended that no evidence links Smith to his girlfriend's car on the night of the robbery. Further, Smith argued that witnesses could have identified him through his distinctive features, yet they did not. Finally, the police did not gather forensic evidence linking him to the crime. The trial court denied Smith's motion. The jury then found Smith guilty of aggravated robbery.

On appeal, Smith argues that the trial court erred in denying his directed-verdict motion. We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *MacKool v. State*, 365 Ark. 416, 231 S.W.3d 676 (2006). When reviewing the sufficiency of the evidence, we determine whether there is substantial evidence to support the verdict, viewing the evidence in a light most favor-

---

1.  The record reveals that Gamble is the father  of Shelton's two children.

able to the State. *Tate v. State,* 357 Ark. 369, 167 S.W.3d 655 (2004).

A person commits aggravated robbery if, with the purpose of committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person, and the person is armed with a deadly weapon or represents by word or conduct that he is armed with a deadly weapon. Ark.Code Ann. §§ 5–12–102, 5–12–103(a)(1)–(2) (Repl.2006). Aggravated robbery is a Class Y felony. Ark.Code Ann. § 5–12–103(b).

■ Arkansas law is clear that a conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. Ark.Code Ann. § 16–89–111(e)(1)(A) (Repl.2005). The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof. Ark.Code Ann. § 16–89–111(e)(1)(B). The corroboration must be sufficient, standing alone, to establish the commission of the offense and to connect the defendant with it. *Tate, supra.* The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Martin v. State,* 346 Ark. 198, 57 S.W.3d 136 (2001).

■ Circumstantial evidence may be used to support accomplice testimony, but it, too, must be substantial. *MacKool, supra.* Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Id.* Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. *Id.* The presence of an accused in proximity of a crime, opportunity, and as-sociation with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. *Id.*

■ Smith argues that, although the surveillance video independently established the commission of aggravated robbery at Game Central Arcade, there was no evidence that sufficiently connected him to the crime. Smith argues that there was no independent evidence indicating that Riley's vehicle was used during the robbery and that the only evidence that he had access to Riley's vehicle was a hearsay statement by Jordan. Riley, who did not testify, told Jordan that Smith frequently borrowed her vehicle to go to the clubs and not that Smith used Riley's vehicle on the night of the robbery. Smith maintains that, without the accomplices' testimony, there was no corroboration that Smith was the robber in the video. Smith asserts that Jordan's opinion that the second robber in the video was him rested solely on the height of the robber in relation to the height of the machines at the arcade and that height was the only similarity between the robber in the video and Smith. Smith points out that none of the witnesses saw the robbers' faces and that there was no physical evidence collected from the scene.

We agree with Smith that the surveillance video established the commission of the aggravated robbery at Game Central Arcade. *See Snider v. State,* 2010 Ark. App. 694, 378 S.W.3d 264. The remaining question is whether the evidence tends to connect Smith with the commission of the crime. A great deal of Smith's argument focuses on perceived misrepresentations made by the prosecutor; however, we note that the jury was instructed that statements by counsel were not evidence. Jordan testified that he confirmed the truth of

the information provided by Shelton, who was not an accomplice. Shelton's information that "E.T." drove a tan Chevrolet Blazer, lived near the entrance of Griff King Courts, and had a pregnant girlfriend helped police identify "E.T." as Smith within a short period of time. Shelton's testimony that she saw the tan Blazer parked at her neighbor's house further connected Smith to another person involved in the robbery at Game Central Arcade, in that Shelton's neighbor was Gamble's girlfriend. Finally, Jordan testified that Smith matched the description of the second robber in the surveillance video based on his height. Although this evidence alone was not sufficient to sustain Smith's conviction, it *tended to connect* Smith to the aggravated robbery at Game Central Arcade, without consideration of the accomplices' testimony. Thus, the trial court did not err in denying Smith's directed-verdict motion.

Next, Smith argues that the trial court erred in denying his motion for a mistrial after Gamble twice referred to Smith's prior robbery conviction. At trial, Gamble testified that he originally told police that the robbery was Smith's idea because he knew Smith already had a robbery charge. Defense counsel objected, and the judge sustained the objection and ordered the jury to disregard Gamble's answer, if they heard it. The judge then polled the jury and determined that eight jurors heard the answer. Later, after Gamble had been declared a hostile witness, the prosecutor attempted to get the truth from Gamble as to who was driving the getaway vehicle. Gamble claimed that it was his ex-girlfriend and that he only told police the previous story about Smith's girlfriend because "my other homeboy name, use ET's name because I knew he had a prior robbery." Defense counsel objected again, and the jury was removed from the courtroom. Defense counsel moved for a mistrial. The judge agreed to admonish the jury again but found that, considering the totality of Gamble's testimony and the many contradictions affecting his credibility, the statement did not yet rise to the level of prejudicing Smith, thus warranting a mistrial. The judge ordered Gamble to make no further reference to Smith's prior robbery conviction, and the judge admonished the jury to "disregard that question and that response that you may or may not have heard the witness give...." The judge further ordered that the matter be stricken from the record and told the jury that the matter could not be considered.

The Arkansas Supreme Court has held that a mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when the fundamental fairness of the trial itself has been manifestly affected. *Parker v. State*, 355 Ark. 639, 144 S.W.3d 270 (2004). This court has held that any reference to a defendant's prior convictions during the guilt phase of a criminal trial results in some prejudice to the defendant. *Killian v. State*, 96 Ark. App. 92, 238 S.W.3d 629 (2006). The trial court, however, is granted a wide latitude of discretion in granting or denying a motion for mistrial, and the decision of the trial court will not be reversed except for an abuse of that discretion or manifest prejudice to the complaining party. *Id.* The general rule is that a cautionary instruction or admonishment to the jury can make harmless any prejudice that might occur from an inadvertent reference to a prior conviction. *Id.*

On appeal, Smith contends that the jury was not admonished to specifically disregard Gamble's statements about Smith's prior robbery; instead, the jury was ad-

monished to disregard the responses if jurors heard them. We disagree with this characterization of the ruling. In admonishing the jury, the judge simply acknowledged that the jurors may not have heard Gamble's response, as shown when the jury was polled after Gamble's first reference to Smith's prior conviction. The judge was careful not to repeat Gamble's prejudicial remark in case the jurors did not hear it the second time. The trial court is in a better position to determine the effect of such remarks on the jury, and the judge concluded that, given Gamble's damaged credibility, his references to Smith's prior conviction were insufficient to warrant a mistrial. We cannot say that the trial court abused its discretion in denying Smith's motion for a mistrial.

Affirmed.

HART and GLADWIN, JJ., agree.