

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-16-380

| | |
|---|---|
| JEFFERY DUANE PROCELLA<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** November 2, 2016<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT<br>[NO. 46CR-15-324]<br><br>HONORABLE CARLTON D. JONES, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

A Miller County jury convicted appellant Jeffery Duane Procella of two counts of theft of scrap metal and two counts of first-degree criminal mischief. He was sentenced to an aggregate term of twelve years' imprisonment. On appeal, he argues that the trial court erred in denying his directed-verdict motions because there was insufficient corroboration of accomplice testimony. We affirm.

### I.     *Trial Testimony*

Darin Archer, a senior special agent with the Union Pacific Railroad Police, testified that signal crossings are designed to prevent a vehicle from being struck by a train. He explained that there is a wire that runs under the tracks and attaches to a junction box and that, when the train's wheels touch the track, a signal is sent through the shunt wire to the box to activate the crossing signal. He testified that shunt wire controlling a crossing signal at the Pinehurst Street Station in Texarkana had been cut and removed on April 14, 2015,

creating a public-safety concern. Following the theft, Archer placed a motion-activated camera at that location. On April 18, 2015, the wire was again cut and removed. The photos were downloaded, and the wire was replaced. Again, on the morning of April 19, 2015, the wire was cut and removed. Archer downloaded the photos and contacted police.

While replacing the camera located along a tree line, a man later identified as Procella was seen walking along the tracks. Archer stated that Procella was standing where the wire had been cut and appeared to be looking at the newly replaced shunt wire. Archer made contact with Procella because he was trespassing. Archer testified that Procella had admitted being on the tracks on both April 18 and 19 but denied cutting or stealing any wire. Archer said that Procella did admit having picked up wire that he claimed had been left lying on the ground.

Archer was shown a sequence of photos from the motion-activated camera. He testified that the photos showed a white male wearing a backpack and a white female holding a bag or backpack. According to Archer, the male in the photo appeared to be looking at the shunt wire. Archer testified that the wire was visible in one photo but was gone from the next photo. Archer stated that twenty-five to thirty feet of wire had been stolen each time and that the wire was worth approximately $10. He explained that the wire was flexible in that it could be folded or rolled and would fit inside a backpack.

Adam Lange, a signal maintainer for Union Pacific, testified that he replaced the signal shunt wire each time it had been stolen and specifically denied having left any excess wire on the ground. He said that it took approximately one minute to roll up thirty feet of shunt wire. Lange was shown the same sequence of photos and similarly testified that the

signal shunt wire could be seen in one photo but not in the photo immediately following that one. Lange confirmed that approximately $800 in damage was caused each time the wire had been cut. Lange said that there had been no more thefts of wire since April 19, 2015.

Amy Telles admitted that she and Procella, her boyfriend at the time, were the individuals depicted in the photos taken on April 18 and 19. In describing the shunt wire, Telles stated that it was underneath the tracks and led to boxes. According to Telles, Procella had cut the signal shunt wire with clippers, rolled it up, and concealed it in their backpacks.

## II. *Accomplice Testimony*

Arkansas law is clear that a conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. *Smith v. State*, 2012 Ark. App. 534, 423 S.W.3d 624. An accomplice's testimony, however, need not be corroborated as to a misdemeanor. *See* Ark. Code Ann. § 16-89-111(e)(2) (Supp. 2015). Here, Procella was charged with four Class D felonies, but the two counts of first-degree criminal mischief were reduced from Class D felonies to Class A misdemeanors.

## A. Theft of Scrap Metal

A person commits theft of property if he knowingly takes or exercises unauthorized control over the property of another with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(1) (Supp. 2015). Theft of scrap metal is a Class A misdemeanor if the value of the property is $1,000 or less. Ark. Code Ann. § 5-36-123(c)(4)(A). Upon conviction of a person for theft of scrap metal, the classification and

penalty range shall be increased by one classification if the person caused incidental damage to the owner of the scrap metal or the property of the owner of the scrap metal while committing the theft of scrap metal and the costs of incidental damage were more than $250. Ark. Code Ann. § 5-36-123(e)(1).

## B. First-Degree Criminal Mischief

A person commits the offense of criminal mischief in the first degree if he purposely and without legal justification destroys or causes damage to any property of another. Ark. Code Ann. § 5-38-203(a)(1) (Repl. 2013). Criminal mischief in the first degree is a Class A misdemeanor if the amount of actual damage is $1,000 or less. Ark. Code Ann. § 5-38-203(b)(1).

The jury was instructed that Procella could be convicted of neither theft of scrap metal nor first-degree criminal mischief without evidence corroborating his accomplice's testimony. Although Procella challenged the sufficiency of the corroborating evidence in his directed-verdict motions and in his brief on appeal, the issue of whether corroboration was even required under section 16-89-111 based on each offense's classification has not been argued by either party. We recognize that there is some question whether the theft of scrap metal here constituted a misdemeanor that was not converted into a felony until after it was enhanced "upon conviction"; however, we will analyze the argument as it was framed for us.

## III. *Discussion*

Procella argues that, aside from Telles's testimony, there were photos of him and Telles on the tracks but that none of the photos showed him cutting or concealing any shunt

wire. Procella argues that the officers searched his backpack and person but did not find wire, clippers, or receipts reflecting the sale of scrap metal. Procella points out that others had been in the vicinity—there was a vagrant camp and an animal shelter nearby. Moreover, he contends that he, along with an unknown number of people, used the well-worn walking trails in the area.

The corroboration of accomplice testimony is not sufficient if it merely shows that the offense was committed and the circumstances thereof. *Smith*, *supra*. The corroboration must be sufficient, standing alone, to establish the commission of the offense and to connect the defendant with it. *Id.* The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Id.*

The corroborating evidence may be circumstantial so long as it is substantial; evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. *Riley v. State*, 2009 Ark. App. 613, 343 S.W.3d 327. The presence of an accused in proximity of a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. *Id.* Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Smith*, *supra*. Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. *Id.*

The jury saw the sequence of photos taken by the motion-activated camera and also heard testimony from both Archer and Lange that the shunt wire was visible in one photo,

but in the next photo, the wire was gone. There was testimony that Procella admitted having been in the area where the shunt wire was stolen on April 18 and 19. The photos indicated that only Procella and his accomplice were near the shunt wire prior to its being stolen. According to testimony, Procella even admitted taking wire from the area, and the jury could have believed Lange's testimony that he did not leave unused wire on the ground when replacing the stolen wire. Finally, there was testimony that the theft of the shunt wire stopped after Procella had been caught. This circumstantial evidence independently establishes the crimes and *tends to connect* Procella to the commission of those crimes. We hold that the corroborating evidence was substantial and thus affirm Procella's convictions.

Affirmed.

GLADWIN, C.J., and GLOVER, J., agree.

*Phillip A. McGough, P.A.*, by: *Phillip A. McGough*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Evelyn D. Gomez*, Ass't Att'y Gen., for appellee.