

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-16-737

| | |
|---|---|
| CORDERRO FOSTER | Opinion Delivered FEBRUARY 1, 2017 |
| APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-15-102] |
| V. | |
| STATE OF ARKANSAS | HONORABLE ROBERT H. WYATT, JR., JUDGE |
| APPELLEE | AFFIRMED |

### DAVID M. GLOVER, Judge

Appellant Corderro Foster was convicted by a Jefferson County jury of two counts of aggravated robbery and sentenced to ten years in the Arkansas Department of Correction for each conviction, with the sentences to run consecutively. On appeal, Foster argues the trial court erred in denying his motions for directed verdict because there was insufficient evidence to corroborate the accomplice testimony. We affirm Foster's convictions.

At trial, Detective Mike Sweeney of the Pine Bluff Police Department testified he responded to an aggravated-robbery call on January 12, 2015, at Mary Franklin's residence and encountered the victims, eighty-one-year-old Will Wright and eighty-four-year-old Mary Franklin, who are siblings. After speaking to Wright and Franklin, Sweeney learned the victims had gone to Relyance Bank and then to Brookshire's Grocery. Sweeney located Wright's vehicle on Brookshire's video-surveillance tapes and saw that a vehicle matching the description of the vehicle used in the robbery, a four-door brown Oldsmobile Intrigue,

immediately followed Wright's vehicle when Wright left Brookshire's parking lot; he further noted that the suspect vehicle had arrived in the Brookshire's parking lot approximately nine minutes after Wright's vehicle. On the surveillance video, Sweeney saw two African-American males enter the grocery store, with a third African-American male following a few minutes behind; about twenty minutes elapsed between Wright entering and leaving the store, with the three suspects leaving at the same time as Wright.

Sweeney made contact at the Civic Center Motel with the three individuals who appeared to be the three males seen at Brookshire's—Corderro Foster, Justin Cartwright, and Clifton "Rico" Chambers; he also encountered a female at the motel. Sweeney testified that Ms. Franklin positively identified Justin Cartwright, but she did not make a positive identification of any other suspect. Sweeney stated he participated in an interview of Foster, who admitted he had been to Brookshire's to use the change machine but denied knowing anything about an aggravated robbery.

On cross-examination, Sweeney testified that no physical evidence was recovered at the time the three suspects were arrested; to his knowledge, no one ever searched Foster's or Cartwright's homes; at no time did either Wright or Franklin identify Foster in their interviews; and there was never a positive identification of the vehicle.

Ann Sims, Foster's mother, testified that the vehicle in the photograph circulated by the police belonged to her son and she had purchased the vehicle for him. Sims said two detectives came to her home and searched the vehicle, but she was never told anything had been recovered from it.

SLIP OPINION

Sergeant Carnell Williams of the Pine Bluff Police Department, supervisor of the crime-scene unit, testified that he took photographs at Franklin's house of Wright's vehicle. A purse, several envelopes, and material with Franklin's name on it were found in the trash can in the backyard of Franklin's residence. Although fingerprints were taken, none were positively identified.

Will Wright testified that on January 12, 2015, he picked Franklin up from her house, went to Relyance Bank and made a withdrawal in the drive-thru, and placed the envelope with the money in it in his shirt pocket. After leaving the bank, the two went to Brookshire's for Wright to pay his Entergy bill; Franklin remained in the vehicle while Wright went into the store. Wright estimated he was in Brookshire's twenty to thirty minutes. Wright was unaware of a vehicle following him as he returned to Franklin's house; while they sat in the vehicle talking, a man appeared at Wright's open window, placed a handgun in the window, and told Wright if he moved, he would blow his brains out. Wright said a second male arrived a few seconds later; while he was unable to get a good view of the individuals because he was concerned for his and his sister's safety, he said they appeared to be African-American males in their twenties. Wright testified that one of the males took the bank envelope out of his pocket; the first suspect then went to Franklin's side of the vehicle, threatened to blow her brains out, took her purse, and left. Wright did not see any other individuals other than the two men who approached the vehicle. Wright was unable to positively identify Foster's vehicle, although he testified it bore similar characteristics to the car he had seen behind him in the driveway while the aggravated robbery was taking place. Wright was also unable to

positively identify the suspects; although he testified Foster bore a resemblance to the person who robbed him, he could not say 100 percent that he was the person who had robbed him.

Justin Cartwright testified that on January 12, 2015, he was with Foster and Chambers; they went to Brookshire's in Foster's car; and he saw Wright in line at Brookshire's with a bank envelope in his pocket, but he did not mention that fact to Foster or Chambers at the time. Cartwright said when they left, Foster was driving, but there was no discussion about following Wright out of the parking lot. Cartwright testified he asked Foster to borrow his car, dropped Foster off, and he and Chambers robbed Wright. Cartwright admitted he had pled guilty to aggravated robbery in this case because he had committed the crime, but he told the jury Foster was not a participant and had nothing to do with the aggravated robbery.

Rico Chambers testified he had gone to Brookshire's with Cartwright and Foster in Foster's car; Cartwright and Foster went into Brookshire's and he followed about five minutes later; Cartwright had seen Wright with an envelope in his hand inside the store; and when the three of them left the store, they discussed trying to get the money from Wright, so they followed him out of the parking lot. Chambers testified he stayed in the back seat of the car while Cartwright and Foster robbed Wright and Franklin; Cartwright and Foster both had guns; Foster was on one side of the vehicle and Cartwright was on the other; Cartwright got the money and Foster took the purse; Cartwright and Foster returned to the vehicle; and they drove off. Chambers said he had not been charged with this crime. On cross-examination, Chambers testified he knew before leaving Brookshire's that Cartwright planned to rob Wright and Franklin because he had heard Cartwright and Foster talking about it. He

4

reiterated that Cartwright and Foster were the ones who robbed Wright and Franklin, and he had no part in the robbery.

Franklin testified similarly to her brother about going to the bank, Brookshire's, and returning to her house. She said that while waiting on Wright at Brookshire's, she noticed three young African–American men come out of the store and get into a tan-colored car. Her testimony regarding the robbery was the same as her brother's. Franklin testified the suspects were two young black men in their twenties who left in a brown car. Although she was unable to positively identify Foster immediately after the aggravated robbery, at trial she identified Foster as one of the men who had robbed her.

Foster contends the trial court erred in denying his motions for directed verdict on the aggravated-robbery charges because there was insufficient corroboration of accomplice testimony in the case. We find this argument unpersuasive.

A person is criminally liable for the conduct of another person when he is the accomplice of another person in the commission of an offense. Ark. Code Ann. § 5-2-402 (Repl. 2013); *Davis v. State*, 2013 Ark. App. 658, 430 S.W.3d 190. An accomplice is a person who, with the purpose of promoting or facilitating the commission of an offense, solicits, advises, encourages, or coerces the other person to commit it; aids, agrees to aid, or attempts to aid the other person in planning or committing it; or having a legal duty to prevent the commission of the offense, fails to make proper effort to do so. Ark. Code Ann. § 5-2-403; *Davis*, *supra*.

SLIP OPINION

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Snider v. State*, 2010 Ark. App. 694, 378 S.W.3d 264. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, either direct or circumstantial; evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* On appeal, we view the evidence in the light most favorable to the State, considering only that evidence supporting the verdict. *Id.* A jury is free to believe all or part of a witness's testimony, and we do not weigh the credibility of witnesses on appeal—that is a job for the finder of fact, not the appellate court. *Boyd v. State*, 2016 Ark. App. 407, 500 S.W.3d 772.

A person cannot be convicted of a felony based on the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the commission of the offense. Ark. Code Ann. § 16-89-111(e)(1)(A) (Repl. 2005); *Smith v. State*, 2012 Ark. App. 534, 423 S.W.3d 624. The corroboration must be sufficient, standing alone, to establish the commission of the offense and to connect the defendant with it; the corroboration is insufficient if it merely shows that the offense was committed and the circumstances thereof. *Smith, supra.* Circumstantial evidence may be used to support accomplice testimony; though it need not be so substantial in and of itself to sustain a conviction, it must, independently of the accomplice's testimony, tend in some degree to connect the defendant with the commission of the crime. *Smith, supra.* The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect

6

the accused with its commission. *Smith, supra.* The presence of an accused in proximity of a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. *Smith, supra.*

A person commits aggravated robbery if he commits robbery as defined in Arkansas Code Annotated section 5-12-102 and is armed with a deadly weapon, represents by word or conduct that he is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-12-103 (Repl. 2013). A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person. Ark. Code Ann. § 5-12-102(a) (Repl. 2013).

Foster is incorrect in his assertion that there was not sufficient evidence presented to corroborate Chambers's testimony. As stated above, the presence of an accused in proximity of a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. *Smith, supra.* Here, Foster told Detective Sweeney he was at Brookshire's on the date in question. Surveillance tapes showed Foster, Cartwright, and Chambers in the store at the same time as Wright, leaving the store immediately after Wright, getting into a tan vehicle, and leaving the parking lot right behind Wright. Foster's mother testified that the vehicle police were searching for in connection with the aggravated robberies belonged to Foster. And, at trial, Franklin identified

Foster as the person who committed the aggravated robberies with Cartwright. This testimony provides sufficient corroboration of Chambers's testimony.

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.