N. MARK KLAPPENBACH, Judge
Appellant Rodney Antonio Willis was convicted by a jury in Mississippi County Circuit Court of two counts of aggravated robbery. The charges related to two armed robberies committed on the night of April 4, 2016, in Blytheville, Arkansas, one at Jordan's QuikStop and one at a Pizza Hut. Appellant's sole argument on appeal is that the trial court erred in denying his motions for directed verdict because there was not sufficient evidence to corroborate the testimony of his accomplice, Courtney Ford. We hold that the trial court did not err in denying appellant's motions and affirm.
A person is criminally liable for the conduct of another person when he is the accomplice of another person in the commission of an offense.
*552 Ark. Code Ann. § 5-2-402 (Repl. 2013); Davis v. State , 2013 Ark. App. 658, 430 S.W.3d 190. An accomplice is a person who, with the purpose of promoting or facilitating the commission of an offense, solicits, advises, encourages, or coerces the other person to commit it; aids, agrees to aid, or attempts to aid the other person in planning or committing it; or having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so. Ark. Code Ann. § 5-2-403 ; Davis, supra.
We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. Snider v. State , 2010 Ark. App. 694, 378 S.W.3d 264. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, either direct or circumstantial; evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. Id. On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. Id. A jury is free to believe all or part of a witness's testimony, and we do not weigh the credibility of witnesses on appeal-that is a job for the finder of fact, not the appellate court. Foster v. State , 2017 Ark. App. 63, 510 S.W.3d 782.
Arkansas law is clear that a conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. Procella v. State , 2016 Ark. App. 515, 504 S.W.3d 686. The corroboration of accomplice testimony is not sufficient if it merely shows that the offense was committed and the circumstances thereof. Smith v. State , 2012 Ark. App. 534, 423 S.W.3d 624. The corroboration must be sufficient, standing alone, to establish the commission of the offense and to connect the defendant with it. Id. The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. Id. The corroborating evidence may be circumstantial so long as it is substantial; evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. Riley v. State , 2009 Ark. App. 613, 343 S.W.3d 327. The presence of an accused in proximity of a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. Id. Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. Smith, supra. Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. Procella, supra .
There was no dispute that two masked females wearing black hoodies entered the two Blytheville businesses on the night in question, pointed a gun at the employees, and demanded money before they fled in a white Dodge Charger. One of those females, Courtney Ford, later turned herself in to the police. She admitted that she and a female friend, Jamacia "JJ" Nevels, planned the armed robberies with Dante Reed, who drove the car, and with appellant, who rode in the front passenger seat of the Charger. Ford said that appellant gave her the gun that she used in the robberies.
Ford testified that before the robberies, they went to Reed's house. Ford said that she wanted to go home, but appellant pulled out a gun and told her that she was not going anywhere. The four went to the Family Dollar store, and then all four went to Wal-Mart to "get hoodies and stuff." Ford said that Nevels picked out the hoodies, *553 and Reed paid for them. Ford stated that when they went to Jordan's QuikStop, appellant told her and Nevels to go in even though she (Ford) was scared and said she "was not going to do it." Ford testified that appellant told the girls that they "were going to do it because [Reed] did not get all of this stuff for nothing." Ford said that she got the gun from appellant, she and Nevels went into the store, they demanded the money, Nevels grabbed the money, and they ran back to the car. She said that it was appellant's idea to rob the Pizza Hut, which they accomplished in the same manner as the convenience store. She testified that all four of them got money from the robberies and that she returned the gun to appellant.
An employee at Jordan's QuikStop, James Sledge, testified that he was working on the night that the store was robbed at gunpoint by two masked girls wearing hoodies. A Pizza Hut employee testified that two females came in and robbed the restaurant at gunpoint and that they left in a white Charger.
A Blytheville police officer, Eric Ferrell, testified that he retrieved the video footage from Jordan's QuikStop, which had been robbed at approximately 9:30 p.m. Ferrell was able to acquire still photographs of the two female suspects, which led to Ford turning herself in to the police. Ford was the first to bring up appellant's involvement when he met with her; Ferrell said that he did not bring up appellant in the interview.
An asset-protection manager at Wal-Mart, Brandon Smith, testified about his retrieval of video surveillance in the store recorded between 8:26 p.m. and 8:38 p.m. Smith testified about the video clips shown to the jury, which showed the parking lot, the entry to the store, the bathroom area, the hallway leading to the cash registers, and the exit from the store.
Ferrell testified that based on the Wal-Mart video, he could see two black males and two black females exiting a white four-door Dodge Charger and subsequently purchasing black hoodies. Ferrell identified the males as Dante Reed and appellant. Ferrell identified the females as Courtney Ford and Jamacia Nevels. He stated that appellant was observed entering the bathroom at approximately 8:28 p.m. and exiting one minute later, crossing the main aisle into the store and entering the clothing section. Ferrell stated that appellant was seen on the video stopping to talk to Reed, and then Reed proceeded into the clothing section, whereas appellant headed toward the exit. Appellant went off camera near the store's exit at approximately 8:31 p.m. Ford, Nevels, and Reed were observed in the clothing department. Reed paid for two black hoodies at a self-checkout register at approximately 8:32. Ford was observed carrying the merchandise out of the store, followed by Nevels. Reed was seen reentering the driver's seat of the vehicle, and the two females were seen entering the back seats. The vehicle left the parking lot at approximately 8:38 p.m. Ferrell completed affidavits for the arrest of Reed, Nevels, and Ford a few days before he did for appellant. Ferrell explained that this was because he first sought to review the entirety of the Wal-Mart footage and to obtain statements from the others involved.
When appellant was interviewed by the police, he stated that Reed is his cousin, that Reed drives a Dodge Charger, and that he had gone out to eat with Reed and two girls that day. Appellant denied knowing anything about the robberies or participating in any way.
Appellant's attorney moved for directed verdict, in part, on the basis that in order to be sufficient evidence, Ford's testimony was required to be, but had not been, *554 corroborated by other evidence tending to connect appellant with the commission of the robberies. Appellant renewed this motion at the appropriate times, and each motion was denied. The jury found appellant guilty, the judgment of conviction was filed of record, and this timely appeal followed.
Appellant is incorrect in his assertion that there was not sufficient evidence presented to corroborate Ford's testimony. As stated above, the presence of an accused in proximity of a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. Foster, supra. Appellant admitted that Reed is his cousin and that he had been with Reed and the two girls that day in the Dodge Charger. Ford had testified to the four of them going to Wal-Mart to purchase hoodies for the girls to wear during the robberies. The Wal-Mart video supported Ford's testimony about the Wal-Mart shopping trip and about appellant being with them for that shopping trip, which occurred approximately one hour before the armed robberies. Appellant was seen in the company of the persons who purchased the hoodies, and the act of acquiring the hoodies was a substantial step toward the commission of these crimes.
We hold that there was substantial corroborating evidence to connect appellant with these robberies, and we thus affirm appellant's convictions. See Maynard v. State , 21 Ark. App. 20, 727 S.W.2d 858 (1987).
Affirmed.
Virden and Murphy, JJ., agree.