Cite as 2020 Ark. App. 320

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-19-753

| | | |
|---|---|---|
| LORENZO A. GREEN | | **Opinion Delivered** May 27, 2020 |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CR-17-2499] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE JOANNA TAYLOR, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Lorenzo A. Green was convicted by a jury of aggravated robbery and accomplice to tampering with physical evidence. The charges related to the beating and robbery of Brandon Blake and the disposal of the shoes that Green was wearing when he beat up Blake. Green argues on appeal that there is insufficient evidence to support his convictions and that the circuit court therefore erred in denying his motions for directed verdict. We affirm.

A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Halliburton v. State*, 2020 Ark. 101, 594 S.W.3d 856. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We will affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* We do not weigh

the evidence presented at trial or assess the credibility of the witnesses because those are matters for the finder of fact, which is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* Further, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. Id. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.*

In light of the standard of review, we frame the issues presented on appeal. Green was accused of inflicting serious physical injury on Blake and stealing Blake's money on the night of July 14, 2017. *See* Ark. Code Ann. § 5-12-103(a)(3) (Repl. 2013) (elements of aggravated robbery). Green was also accused of being an accomplice to his girlfriend, Kayla Rolle, in disposing of the Nike Air Jordan basketball shoes that Green was wearing during the beating, which had Blake's blood on them. *See* Ark. Code Ann. § 5-53-111(b)(1) (Repl. 2016) (elements of tampering with physical evidence). A person is criminally liable for the conduct of another person when he is the accomplice of another person in the commission of an offense. Ark. Code Ann. § 5-2-402 (Repl. 2013); *Davis v. State,* 2013 Ark. App. 658, 430 S.W.3d 190. An accomplice is a person who, with the purpose of promoting or facilitating the commission of an offense, solicits, advises, encourages, or coerces the other person to commit it; aids, agrees to aid, or attempts to aid the other person in planning or committing it; or having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so. Ark. Code Ann. § 5-2-403; *Davis, supra.*

Green ultimately admitted to law enforcement that he had an altercation with Blake that night and beat him up, but he denied that he had stolen Blake's money or had anything

2

to do with Rolle disposing of his basketball shoes. Green argued that Rolle was an accomplice, whose testimony was required to be corroborated, and in the absence of corroboration, neither crime had been proved.

Arkansas law is clear that a conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. *Procella v. State*, 2016 Ark. App. 515, 504 S.W.3d 686. The corroboration of accomplice testimony is not sufficient if it merely shows that the offense was committed and the circumstances thereof. *Willis v. State*, 2018 Ark. App. 199, 546 S.W.3d 550. The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Id.* The corroborating evidence may be circumstantial so long as it is substantial; evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. *Id.* The presence of an accused in proximity of a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. *Id.* Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Id.* Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. *Id.*

The evidence at trial showed the following. At approximately 5:00 a.m. on July 14, 2017, the police received a call that a severely beaten and bloody Brandon Blake was found lying in a parking lot off Dickson Street in Fayetteville. Blake was found on the pavement

in a pool of blood next to a truck that had blood spatter on it. A broken beer bottle and a bloody chunk of concrete were found near Blake's body. Blake had no identification or anything else in his pockets, and he was unable to communicate. Blake was taken to the hospital for critical care.

A couple of days later, an anonymous tipster (later identified as a friend of Rolle's) sent the police a cell-phone photograph that depicted a black male (later identified as Green) from the back standing over a bloody and apparently unconscious Blake on the parking lot next to the truck. Green was wearing a red sleeveless shirt, black shorts, and black and white Nike Air Jordan basketball shoes; Green's shoes had blood on them.

Green and his girlfriend, Kayla Rolle, were arrested on July 19, and they were interviewed separately by the police. At first, Green denied having been on Dickson Street that night but later admitted that he and Blake had gotten into an altercation around 2:00 a.m. Green said Blake was drunk and provoked the fight by calling him a racial epithet. Green denied owning Nike Air Jordan basketball shoes, but after he was shown the cell-phone photograph, he admitted that he did own a pair. Green initially denied there being any talk between him and Blake about buying marijuana, but later in the interview, Green said Blake "did ask about some weed." According to Green, Blake threw the first punch, Green hit Blake several times and knocked him out, and "yeah, I kicked him, that's probably how the blood got on my shoe."

Green said that after the fight, his girlfriend was "looking for" him, picked him up, and drove toward her home, but about fifteen or twenty minutes later they went back to check on Blake. Green explained that he saw how badly Blake was injured but "I did not

4

do that much damage, I did not hit no bricks, none of that shit. 'Cause when we went back to look at him, I wonder where the fuck this brick come from? And she took a picture and I'm like, what the hell? . . . By the time I came back it was, all types of other shit was laying around from him, bro. . . . I did not take no wallet, no money[.]" When asked about the whereabouts of the Nike shoes he had been wearing, Green said that he last saw them at his girlfriend's house but that his girlfriend told him the shoes went into a dumpster. Green maintained that someone else must have robbed and beaten Blake after they fought.

The police located Green's Air Jordan basketball shoes inside a black bag in the dumpster of a Fayetteville apartment complex. A forensic serologist testified that the shoes found in the dumpster had Blake's blood on them. DNA testing confirmed that the concrete block in the parking lot had Blake's blood on it, and the broken beer bottle had Blake's DNA on it. Law enforcement found a picture of Blake's Oregon driver's license on Rolle's cell phone.

Blake, although still suffering from his injuries, testified for the State. Blake had come to Fayetteville on the afternoon of July 13, checked into a hotel, and was going out for the evening before leaving for a fishing trip on the White River with a friend. He took an Uber ride to Dickson Street. He had his wallet, which held his debit card and his driver's license, with him. He asked around where he could get some marijuana, he met a girl who made a few phone calls for him, and Green showed up at the bar. Blake told Green he wanted to buy $80 worth of marijuana, they went to an ATM in the Dickson Street Social Club across the street where Blake withdrew $80, and they decided to walk to a dark parking lot to conduct the transaction. Blake did not remember anything else about that night.

Clint Pollock, an employee of the Dickson Street Social Club, testified that he knew Green and saw him that night around 2:00 a.m. at the Social Club with an unknown white male who used the ATM. Pollock did not perceive any negative interaction between Green and the unknown white male while they were there to use the ATM.

Rolle, who had been charged as an accomplice to these crimes, was called to testify. She stated that she saw Green and Blake together before the fight when they seemed friendly. Green rejoined her at her car about fifteen or twenty minutes later. Rolle drove back to the area on the parking lot where she saw Blake "laid out on the floor" and she started "freaking out." Green got out of the car and went over to Blake. From the car window, Rolle took the picture of Green standing over Blake. Rolle said that Green got back in the car and had cash in his hand. Green threw a wallet in the backseat of the car. After she dropped Green off at his sister's house, she went home. Green had left the wallet in the backseat, and she took a photograph of Blake's driver's license on her cell phone. According to Rolle, after she and Green had met with detectives the first time, Green got his Air Jordan shoes in a black bag, told her that the shoes had to be thrown away, and drove her to an apartment complex, where she threw them in the dumpster.

Green argues that both convictions required that Rolle's testimony be corroborated, and without that corroboration, there is insufficient evidence to support his convictions. With regard to the aggravated-robbery conviction, Green argues that there is insufficient evidence that Green committed theft or that he injured Blake with the intent to commit a theft. With regard to the accomplice-to-tampering-with-physical-evidence conviction,

6

Green argues that there is no corroborating evidence to support that he had anything to do with Rolle dumping his basketball shoes in the dumpster. We disagree.

The State presented evidence to establish that Blake went out that night, took his wallet, met with Green, went with Green to an ATM to withdraw $80 in cash shortly before the altercation between them, was beaten unconscious by Green, and was found within a few hours severely injured, unconscious, and alone on the parking lot with no money or identification on him. Green's own words put him at the scene of the crime; he admittedly beat Blake into unconsciousness and left the scene in Rolle's car. Green's actions that night led to Rolle's having access to Blake's driver's license. Law enforcement found the bloody Nike shoes in a dumpster in a bag consistent with Rolle's description, and Green admitted knowledge of Rolle's having thrown them in a dumpster. Thus, Green's own words, his presence in proximity to the crimes, his opportunity, and his association with Rolle were relevant pieces of evidence that tended to connect Green to these crimes. *See Willis*, *supra*. Stated differently, the evidence here, absent Rolle's testimony, independently established the crimes and tended in some degree to connect Green with the commission of the crimes. *Procella*, *supra*. We hold that the circuit court did not commit reversible error in denying Green's motions for directed verdict.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*Lancaster & Lancaster Law Firm, PLLC*, by: *Clinton W. Lancaster*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.

7