Cite as 2026 Ark. App. 215

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-25-358

| | |
|---|---|
| RICKEY HOWARD, JR. | Opinion Delivered April 8, 2026 |
| APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-22-98] |
| V. | |
| | HONORABLE ALEX GUYNN, JUDGE |
| STATE OF ARKANSAS | |
| | AFFIRMED |
| APPELLEE | |

## N. MARK KLAPPENBACH, Chief Judge

Appellant, Rickey Howard, Jr., was convicted of the first-degree murder of Calvin Kirklin. Howard was also convicted of aggravated robbery, committing terrorist acts, and firearm enhancements. Howard appeals, challenging (1) the sufficiency of the evidence to corroborate the accomplice testimony and (2) the admission into evidence of a video recorded on a cell phone. We affirm.

In the early-morning hours of January 8, 2022, Mr. Kirklin was shot to death as he sat in the driver's seat of his vehicle at an apartment complex in Pine Bluff. A car belonging to Roderick Marks, Jr., had pulled alongside Kirklin's car, and three male occupants exited Marks's car and approached Kirklin's vehicle. Moments later, Kirklin was shot multiple times. Spent shells were recovered from the scene and .40-caliber bullets were recovered from Kirklin's body.

A Pine Bluff police detective testified about his investigation. The detective viewed security-camera video depicting Marks's Chrysler 200, identified by its license plate, at the scene and driving away. Three initial suspects were interviewed and arrested: Roderick Marks, Jr.; Rahn Clay, Jr.; and Steven Grady. Grady subsequently contacted the police through his counsel to voluntarily turn over a cell-phone video recording he took of the murder, which was recorded from inside the Chrysler 200.

The detective stated that Grady gave the police a statement identifying Howard as a person in the car that night. The cell-phone video was played for the jury. The video confirms that three black males were standing by the driver's side of the victim's car just before the gunfire began. A male voice is heard saying that they were going to rob the man. After shots were fired, a female voice can be heard calling out, "Where Rickey go?" A male voice is then heard saying, "Rick—come on, cuz."

Shakirah Stennis was identified as another participant in the crime. Howard was Stennis's live-in boyfriend and is the father of Stennis's two young children. Stennis identified the people in the cell-phone video, confirming Howard was one of the three gunmen. She said they were all intoxicated that night. Just before Stennis's arrest, Howard learned that the police were looking for him, and he left the state; he was found two years later and brought back to Arkansas.[1]

---

[1]Marks, Clay, Grady, Stennis, and Howard faced charges in separate cases for capital murder, aggravated robbery, and committing terroristic acts. In the charging document against Howard, all four of the other defendants are named as accomplices. The charging document was read aloud to the jury at the beginning of trial. The four other defendants

Marks and Stennis testified that Howard was a participant in the crimes and said they were all in the car together when they encountered Kirklin. They also identified Howard as a participant, as depicted in the Grady video. Stennis said that in the video, she was in the back seat; Grady was in the front seat recording the video; and Marks, Clay, and Howard were the ones who got out and stood next to Kirklin's car. Stennis said Marks, Clay, and Howard all had guns. Marks admitted that he (Marks) had a 9mm firearm that night.

The video recording of Howard's police interview was played for the jury. Howard stated he was aware of the cell-phone video. Howard knows Grady; he knows Clay because he is Stennis's cousin; and he knows Stennis because she is his "baby mama." In the interview, Howard claimed that, at about 2:30 a.m., he was walking very near the scene when the Chrysler 200 came by, and he was offered a ride. Howard accepted the ride, and he drank and used drugs along with everyone else in the car. Howard denied being present when the crimes were committed, saying he was picked up after the crimes happened. He said that law enforcement later found him out of state only because he had been arrested on other charges, and someone called to report it. Howard said he stayed with Stennis because, if he did not, she would not let him see his children. Howard was suspicious that Marks and Stennis were having sex. In his interview, Howard said he heard the police already had one of the guns used but said, "I don't know what he [unspecified other participant] did with

---

pleaded guilty to reduced charges and/or lesser sentences. Only Marks and Stennis testified at the jury trial.

3

his." Howard said at one point, "I didn't say I wasn't there. I said I don't remember," but he later reiterated that he was with the others in the "aftermath" and was told by Stennis what happened. He said the only evidence against him was "that he say/she say, and this video of me in a car[.]"

Howard's attorney moved for directed verdict, which was denied. The jury was instructed that Marks and Stennis were accomplices, requiring corroboration of their testimony about Howard's participation. Howard was found guilty and sentenced to forty years for first-degree murder, ten years for aggravated robbery, and ten years for each count of committing a terroristic act along with a firearm enhancement. The circuit court imposed consecutive sentences. This appeal followed.

Howard argues that there was insufficient corroboration of the accomplice testimony to connect him to the crimes. For that reason, Howard asserts that the convictions are not supported by sufficient evidence and must be reversed. We disagree and affirm.

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Williams v. State*, 351 Ark. 215, 91 S.W.3d 54 (2002). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.*

When two or more persons assist each other in the commission of a crime, each is an accomplice and criminally liable, ultimately, for his own conduct, but he cannot disclaim responsibility because he did not personally take part in every act that went to make up the crime as a whole. *MacKool v. State*, 365 Ark. 416, 231 S.W.3d 676 (2006). One may not be

convicted of a felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. *Procella v. State*, 2016 Ark. App. 515, 504 S.W.3d 686. The corroboration of accomplice testimony is not sufficient if it merely shows that the offense was committed and the circumstances thereof. *Smith v. State*, 2012 Ark. App. 534, 423 S.W.3d 624.

The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Smith*, *supra*. There is no dispute that the crimes occurred. The issue is whether the evidence tended to connect Howard to those crimes.

The presence of an accused in proximity to a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of a defendant with the crime. *Smith*, *supra*. Corroborating evidence need only tend in some degree to connect the defendant with the commission of the crime. *Willis v. State*, 2018 Ark. App. 199, 546 S.W.3d 550. The corroboration is not directed at proving the accomplice's testimony. *See MacKool*, *supra*.

First, Howard is mistaken that we are to exclude consideration of the cell-phone video played for the jury. When we review a challenge to the sufficiency of the evidence, we consider all the evidence presented to the jury, whether admitted properly or erroneously. *Cuevas-Flores v. State*, 2024 Ark. App. 451, 699 S.W.3d 156. We view the evidence in a light most favorable to the State. *Steward v. State*, 2026 Ark. App. 1, 729 S.W.3d 170.

Second, Howard is incorrect that we must consider Grady's *video* tantamount to testimony of an accomplice as a matter of law. Howard states that we must exclude consideration of the Grady video for corroboration purposes. Although the statements attributed to Grady by the detective might properly be considered accomplice testimony that must be excised, the video is not the same thing. Thus, there was no Grady "testimony" to exclude from consideration in the video itself. *See* Ark. Code Ann. § 16-89-111(e)(1)(A) (Supp. 2013).

The question before us is whether, absent the statements attributed to accomplices Marks, Stennis, and Grady, there was sufficient evidence to "tend to connect" Howard with the crimes. There was.

Howard's own words placed him near the scene and inside the car in the moments after the shooting. In the cell-phone video, right after the victim was shot, a female voice calls out asking where "Rickey" went. A male voice tells "Rick" to "come on." Howard and Stennis were living together and have children together, and Howard had good reason to stay in Stennis's residence. Howard was aware the police wanted to talk to him about the incident, yet he left the state hours before Stennis was arrested--indicating flight to avoid apprehension. Howard explained his connection to and how he knew each of the people in the car that night. Howard expressed knowledge about the crimes, saying he had heard police "got" one of the guns but did not know about the other two guns.

This evidence "tended to connect" Howard with the crimes that night. This evidence was relevant to his proximity in time and location to the crime scene, his association with

6

people involved in the crimes, and his flight from Arkansas. This was sufficient corroboration. Thus, we hold that the circuit court did not err in denying Howard's motion for directed verdict on accomplice liability.

Howard next contends that the circuit court abused its discretion by admitting the video recorded on Grady's cell phone without first properly authenticating it. Howard failed to preserve this issue for appellate review.

Before trial, Howard argued that the video was inadmissible because it was irrelevant, unduly prejudicial, and contained inadmissible hearsay. During trial, Howard renewed his "objection to the sound from the video being played." The circuit court denied Howard's objection, and the video was played for the jury. Howard did not raise an objection based on authentication.

A specific evidentiary objection is necessary to preserve an issue for appeal. *Beltran v. State*, 2025 Ark. 167. There must be an objection to the circuit court that is sufficient to apprise the court of the particular evidentiary error alleged, and the appellate court will not address evidentiary arguments raised for the first time on appeal. *Id.* A party cannot change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Id.* Howard failed to preserve this argument for appellate review.

Affirmed.

BARRETT and BROWN, JJ., agree.

*Sharon Kiel*, for appellant.

7

*Tim Griffin*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.