SLIP OPINION

Cite as 2017 Ark. App. 146

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–16–723

|  |  |
|---|---|
| AARON LOVELACE | **Opinion Delivered** March 8, 2017 |
| APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR–14–410–5] |
| V. | |
| STATE OF ARKANSAS | HONORABLE JODI RAINES DENNIS, JUDGE |
| APPELLEE | AFFIRMED; REMANDED WITH INSTRUCTIONS TO CORRECT THE SENTENCING ORDER |

## DAVID M. GLOVER, Judge

This is the second appeal in this case.[1] A Jefferson County jury convicted appellant Aaron Lovelace of the offenses of aggravated robbery, battery in the first degree, and theft of property. On appeal, Lovelace argues that the trial court erred in denying his motions for directed verdict based on insufficiency of the evidence. Specifically, Lovelace argues that the State failed to present corroborating evidence for an accomplice's testimony. We affirm Lovelace's convictions.

The victim, Calvin Giles, was called first to testify. On June 23, 2014, he picked up food from Church's Fried Chicken (Church's); when paying, he pulled out a roll of money, describing it as approximately fifty ones, a check, and a $100 bill on top. When he left

---

[1]This case was remanded for supplementation of the addendum. The deficiencies have been corrected, and the case is now again before this court. *See Lovelace v. State*, 2017 Ark. App. 12.

SLIP OPINION

Church's, he drove home, pulled into his driveway, turned the car off, got out with his food, walked up to the door, and began to unlock the storm door; he then heard someone yell, "There he goes." According to Giles, he looked to his left and saw two young, black males in his neighbor's yard; a third individual came around the corner of his house, stepped onto the porch, and fired a gun at him, with the first shot shattering his storm door, the second shot hitting him in the upper right thigh, and a third shot not striking anything. As Giles lay on the ground, the gunman ran toward him, demanding Giles give him the money, which Giles did, along with the check in his pocket. After taking the money, the three individuals ran away. Giles acknowledged that while he was unable to see the face of the gunman clearly, he remembered, as he was lying on the ground after being shot, the gunman was wearing green shoelaces. After viewing the video-surveillance tape at trial from Church's, Giles recalled that he saw the individual with the green shoelaces in the video and identified the person wearing the shoestrings as Lovelace.

On cross-examination, Giles admitted he did not mention the green shoelaces in the statement he gave police on the night of the attack. However, on redirect, Giles reiterated he remembered the shooter had taken the check that was with his cash and the shooter had green shoelaces.

James Murray, pastor of Gospel Temple Baptist Church and Giles's neighbor a block or so away, next testified. On June 23, 2014, he was on his porch between eight and nine in the evening when he saw Giles turn onto his street and wave at him. A gray Equinox with at least three people in it turned behind Giles at a high rate of speed. Shortly after the

Equinox passed by, he heard three or four gunshots, after which he called both his daughter, who is a Pine Bluff police officer, and 911. Murray did not know who was in the vehicle following Giles.

The third witness was Sergeant Carnell Williams of the Pine Bluff Police Department. He confirmed no fingerprints could be obtained from the shell casings due to the rainy conditions that night, but it was determined that the casings were fired from a 9mm Luger. He also said there were no DNA results from the casings.

Detective Jacqueline Stevenson of the Pine Bluff Police Department then testified. She was dispatched to the shooting. When she and her partner were en route to the scene, a vehicle description was put out and she saw a vehicle matching the description. She got behind the suspected vehicle and activated her siren and lights; two males jumped out of the back seat of the vehicle and ran. Two males remained in the vehicle—the driver, Billy Joe Davis, and the passenger, Anphernie Harris. As a result of receiving information, she identified Lovelace, compared him to the Church's video, and it was the same person.

The State's last witness was Anphernie Harris. His testimony was he was currently on probation and had pending criminal charges in the present case for aggravated robbery and battery in the first degree. He was hoping his testimony in Lovelace's case would earn him favor with the State on his pending charges. Harris recounted that on June 23, 2014, he, Lovelace, and Davis left Conway, picked up a friend of Davis's (Harris did not know his name) in Little Rock, and drove to Pine Bluff, where Lovelace went into Church's. According to Harris, while at Church's, Lovelace returned to the car and said he had seen

3

someone with money, and he wanted to take the money. Lovelace re-entered Church's, Giles came out and got into his car, Lovelace re-entered the car, and they followed Giles to his house. When they arrived at Giles's house, Lovelace and Davis's friend got out of the vehicle; Davis drove a little bit further down the road, parked, and he too got out. Harris heard three shots and the three men came running back, got into the truck, and Lovelace said "nobody say nothing." Harris related further that the three were arguing about who got shot and who shot whom. According to Harris, as they pulled off, a detective car pulled in behind them; Lovelace and Davis's friend jumped out and ran; Davis threw a gun in Harris's lap and told him to run; Harris threw the gun back into Davis's lap; Davis threw the gun out the back passenger door; and he (Harris) gave a statement to the police that night, but he lied in the statement and did not mention Lovelace's name.

Harris gave another statement to police and the prosecutor on July 17, 2015, which closely mirrored his testimony at Lovelace's trial. In that statement, he explained how the four of them came to be at Church's and how Lovelace saw a man inside who had a lot of money and he was "fixing to get him." Harris told Lovelace he was not interested, and Davis told Lovelace "that is on you." Harris asked Davis about leaving, but Davis told him to shut up. Harris then recounted how Giles came out of the restaurant, they followed him to his residence in Davis's vehicle, Lovelace and Davis's friend jumped out of the vehicle, and Davis parked the car and approached with them. Within less than three minutes, Harris heard two or three gunshots; they came running back to the vehicle; he never got out of the car; and when Lovelace and Davis returned, they were arguing about the fact there was not much

SLIP OPINION

money and it was not worth it. Lovelace specifically told Harris he was not to say anything, that he was acting like he (Harris) was scared; Harris told Lovelace he was not scared, but he heard gunshots. Lovelace then told Harris he had shot the "dude"; and Davis kept asking Lovelace why he had shot Giles. According to Harris, the police began following them and turned on blue lights; Lovelace and the other man jumped out; Harris jumped in the front passenger seat; Davis told him to run; Harris replied that he was not going to run; Davis told Harris he was "tripping"; Davis threw the gun in his lap; Harris threw the gun back to Davis; Davis threw the gun out the back passenger door; and the police then apprehended him and Davis. Harris thought the handgun Lovelace had was a semi-automatic, and Davis had a chrome .25 caliber semi-automatic.

Lovelace moved for a directed verdict on aggravated robbery on the basis the State had failed to prove that serious physical injury was sustained. With regard to the battery charge and theft charge, Lovelace argued he was not clearly identified as the shooter except by Harris, who was an accomplice. The trial court denied the motions.

Lovelace recalled Detective Stevenson, who testified on direct examination that no gunshot-residue test was performed on Lovelace's hands, nor were any fingerprints taken from the back seat of the vehicle that was stopped. The gun found outside the vehicle was a .25 automatic; she explained no fingerprints were discovered on the gun because it was wet. Stevenson also testified Giles's check was found outside the vehicle, but no fingerprints were taken on it because it was wet. Likewise, the still warm box of food from Church's, found in the backseat of the vehicle, was not examined for fingerprints.

SLIP OPINION

At the close of Stevenson's testimony, the defense renewed its directed-verdict motions verbatim; the trial court again denied the motions. The jury returned guilty verdicts against Lovelace for aggravated robbery, first-degree battery, and theft of property. The jury sentenced Lovelace to twenty years on the aggravated-robbery conviction and thirty years for the first-degree battery conviction, with the recommendation that the sentences be served consecutively; he was fined $2500 for the theft-of-property conviction. The trial court accepted the recommendation of the jury and sentenced Lovelace to consecutive terms of imprisonment.

Lovelace argues on appeal the trial court erred in denying his motions for directed verdict because the only direct evidence implicating him in the offenses was the uncorroborated testimony of his co-defendant, Anphernie Harris. We affirm.

A directed-verdict motion is a challenge to the sufficiency of the evidence. *Davis v. State*, 2016 Ark. App. 274, 493 S.W.3d 339. When the sufficiency of the evidence is challenged in a criminal conviction, the evidence is viewed in the light most favorable to the verdict, and only the evidence supporting the verdict is considered. *Robinson v. State*, 2016 Ark. App. 240, 491 S.W.3d 481. We will affirm if the verdict is supported by substantial evidence—evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Weighing the evidence, reconciling conflicts in the testimony, and assessing credibility are all matters exclusively for the trier of fact, in this case the jury. *Davis*, *supra*. The jury may accept or reject any part of a witness's testimony, and its conclusion regarding credibility is

binding on the appellate court. *Id.*

A person cannot be convicted of a felony based on the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the commission of the offense. Ark. Code Ann. § 16-89-111(e)(1)(A) (Repl. 2005); *Smith v. State*, 2012 Ark. App. 534, 423 S.W.3d 624. The corroboration must be sufficient, standing alone, to establish the commission of the offense and to connect the defendant with it; the corroboration is insufficient if it merely shows that the offense was committed and the circumstances thereof. *Smith, supra.* Circumstantial evidence may be used to support accomplice testimony; though it need not be so substantial in and of itself to sustain a conviction, it must, independently of the accomplice's testimony, tend in some degree to connect the defendant with the commission of the crime. *Smith, supra.* The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Smith, supra.* The presence of an accused in proximity of a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. *Smith, supra.*

We first note that Lovelace has failed to preserve his accomplice-liability argument with respect to the offense of aggravated robbery.[2] When making his directed-verdict

---

[2] A person commits aggravated robbery if he commits robbery as defined in Arkansas Code Annotated section 5-12-102, and the person is armed with a deadly weapon, represents by word or conduct that he is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-12-103 (Repl. 2013). A person commits robbery if, with the purpose of committing a felony or

SLIP OPINION

motions, Lovelace only argued the State had failed to prove that Giles had suffered serious physical injury—he never argued there was no corroboration of Harris's testimony with regard to the aggravated robbery. Rule 33.1(c) of the Arkansas Rules of Criminal Procedure provides that the failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner prescribed in the rule constitutes a waiver of any question pertaining to the sufficiency of the evidence to support the judgment. One cannot change the grounds regarding the sufficiency-of-the-evidence argument on appeal; this rule applies to an accomplice-corroboration argument. *Fulton v. State*, 2016 Ark. App. 28. As Lovelace never made the accomplice-corroboration argument to the trial court with respect to aggravated robbery, he is precluded from now making this argument on appeal. Nevertheless, we note that, had Lovelace made this argument to the trial court, we would have affirmed for the same reasons as we affirm his conviction for battery in the first degree, discussed *infra*.

Lovelace's accomplice-corroboration argument with respect to his misdemeanor theft-of-property conviction, though made to the trial court, also must fail. A person commits theft of property if he knowingly takes or exercises unauthorized control over the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(1) (Repl. 2013). Theft of property is a Class A misdemeanor if the value of the property is $1000 or less. Ark. Code Ann. § 5-36-103(b)(4)(A). Convictions may be had in misdemeanor cases upon the testimony of an accomplice. Ark. Code Ann. § 16-89-111(e)(2)

---

misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person. Ark. Code Ann. § 5-12-102(a) (Repl. 2013).

SLIP OPINION

(Supp. 2015). Lovelace candidly admits in his argument there is "no doubt" Harris's testimony alone supports the convictions if it were not for the rule that an accomplice's testimony must be corroborated. However, because Lovelace's theft-of-property conviction was a misdemeanor, Harris's accomplice testimony was sufficient to support that conviction.

Lovelace did preserve his accomplice-corroboration argument with respect to battery in the first degree. A person commits battery in the first degree if, with the purpose of causing physical injury to another person, the person causes physical injury to any person by means of a firearm. Ark. Code Ann. § 5-13-201(a)(8) (Repl. 2013).

Lovelace agrees that Harris's testimony supports his convictions; however, he contends there was no required corroborating testimony. He is incorrect. The Church's surveillance video showed appellant and three other men arriving at the restaurant in a gray Equinox; Lovelace is shown in the restaurant wearing green shoelaces. The video shows Lovelace watching Giles pull out money to pay for his order, Lovelace leaving the restaurant, and then re-entering to pick up his food. The Equinox leaves the parking lot following Giles's vehicle. Giles's neighbor, James Murray, testified he saw a gray Equinox following Giles; he then heard gunshots. Giles testified the man who shot him was wearing green shoelaces; he identified Lovelace in the Church's video as the person wearing the green shoelaces. When the Equinox was pulled over shortly after the shooting, Lovelace and an unidentified man ran from the scene. Fleeing from the scene is indicative of guilt and can corroborate evidence tending to establish guilt. *Anderson v. State*, 354 Ark. 102, 118 S.W.3d 574 (2003). The Equinox matched the vehicle seen on the Church's video, and a still warm box from Church's

SLIP OPINION

was in the vehicle. The check stolen from Giles was found on the ground next to the Equinox. All of this evidence corroborates Harris's testimony that Lovelace was the person who shot Giles and took his money and check. Viewing the evidence in the light most favorable to the State, we hold that this evidence is sufficient to support Lovelace's conviction for battery in the first degree.

We note the sentencing order mistakenly orders the sentences for aggravated robbery and first-degree battery to be served concurrently. The jury recommended consecutive sentences; the trial court stated it would accept the jury's recommendation; and under each offense in the sentencing order it is noted that the sentences would be served consecutively. However, when noting the total time to be served for all offenses, the trial court's order states thirty years, not fifty years. The trial court is hereby instructed to correct this error. Accordingly, we affirm Lovelace's convictions and remand with instructions to correct the sentencing order.

Affirmed; remanded with instructions to correct the sentencing order.

GRUBER, C.J., and KLAPPENBACH, J., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.