JOHN DAN KEMP, Chief Justice
Appellant Jonathan Ryan Hill appeals an order of the Faulkner County Circuit Court convicting him of aggravated residential burglary and sentencing him to a term of life imprisonment. For reversal, Hill argues that the circuit court erred in (1) denying his motion for directed verdict, (2) refusing to admit character evidence of a victim, (3) admitting text messages from Hill's cell phone, and (4) refusing to allow the cross-examination of an investigating officer with a prior inconsistent statement. Pursuant to Arkansas Supreme Court Rule 1-2(a)(2) (2017), we have jurisdiction of this appeal because Hill received a life sentence. We affirm.
I. Facts
Officer Eric Woodward of the Faulkner County Sheriff's Office relayed the following facts constituting probable cause in an affidavit signed on August 20, 2015. According to Woodward, the Faulkner County Sheriff's Office responded to a Damascus residence in the early morning hours of July 10, 2015, for an alleged home invasion. Deputy Brian Kesterson met the *485 two residents, Cornenia "Cle" Dillard and Donna Salvo, and performed a search of the premises. After discovering that the suspects had left the residence, he interviewed Dillard and Salvo. Dillard stated that he was asleep on the living room couch when a white male intruder woke him, held a knife against his throat, and demanded money and pills. Dillard stated that he did not have those items but that Salvo may have them. According to Dillard, the intruder proceeded toward Salvo's bedroom, and "a scuffle ensued." Dillard grabbed a small .25-caliber pistol and went into the bedroom where he saw the intruder holding a shotgun that had been stored in the bedroom. Dillard stated that he fired at the intruder until his gun jammed but did not know if he had hit the suspect. The intruder dropped the shotgun and exited the residence by jumping out the bedroom window. Dillard then felt a pain in his back and turned around to discover that an unknown white female had struck him. Dillard told the female that the male intruder had left, and she exited the residence at that time. The deputy investigated the scene, processed blood stains and personal effects, and found a spent shell casing in the bedroom that matched the type of pistol that Dillard had fired.
Faulkner County police alerted surrounding law enforcement that a male suffering from a gunshot wound might seek medical treatment at a nearby hospital. The Clinton Police Department received a call and went to the hospital. There, the officers met Hill and his girlfriend, Stacy Wright, who had driven him to the hospital and who initially gave the officers a fictitious name. Hill was transported to Conway Regional Hospital, and Wright was transported to the detention center for multiple outstanding warrants. Salvo later identified Hill as the intruder in a photograph lineup. Testimony revealed that Dillard had passed away before trial.
On September 30, 2016, the State filed an amended felony information charging Hill as a habitual offender with aggravated robbery, aggravated residential burglary, and aggravated assault. Before trial, the State filed a motion in limine to exclude testimony pursuant to Arkansas Rules of Evidence 404(a)(2) and 405. In its motion, the State requested that the circuit court grant the motion to prevent the defense from calling witnesses to provide testimony regarding specific instances of Dillard's conduct. The circuit court granted the motion.
On February 22, 2017, the circuit court held a jury trial. After the State's case-in-chief, Hill moved for a directed verdict. The circuit court denied the motion and found that the State had made a prima facie case on all three counts. After the defense presented its case, Hill renewed his motion for directed verdict, and the circuit court again denied the motion. The jury found Hill guilty of aggravated residential burglary and sentenced him to a term of life imprisonment. The jury acquitted him of aggravated robbery and aggravated assault. Hill timely filed a notice of appeal and now brings his appeal to this court.
II. Motion for Directed Verdict
For the first point on appeal, Hill argues that the circuit court erred in denying his motion for directed verdict. Specifically, Hill contends that the State lacked substantial evidence to support the residential-burglary element of the aggravated-residential-burglary offense, as set forth in Arkansas Code Annotated section 5-39-204 (Repl. 2013). He claims that the State failed to prove that he illegally entered or remained in a dwelling. Hill does not challenge the second element that he was armed with a deadly weapon or that he inflicted or attempted to inflict death or *486 serious physical injury upon another person.
A motion for directed verdict is a challenge to the sufficiency of the evidence. Marshall v. State , 2017 Ark. 347, 532 S.W.3d 563. In a challenge to the sufficiency of the evidence, this court considers only the evidence supporting the conviction in the light most favorable to the State and determines whether the verdict is supported by substantial evidence. Sweet v. State , 2011 Ark. 20, 370 S.W.3d 510. Substantial evidence is evidence that is forceful enough to compel a conclusion beyond suspicion or conjecture. Id. , 370 S.W.3d 510. Finally, the credibility of witnesses is an issue for the jury. Kinsey v. State , 2016 Ark. 393, 503 S.W.3d 772. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. Id. , 503 S.W.3d 772.
Hill was convicted of aggravated residential burglary. A person commits aggravated residential burglary if he or she commits residential burglary, as defined in section 5-39-201, of a residential occupiable structure occupied by any person, and he or she (1) is armed with a deadly weapon or represents by word or conduct that he or she is armed with a deadly weapon; or (2) inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-39-204(a). A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1). Serious physical injury is defined as a physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ. Ark. Code Ann. § 5-1-102(21).
In the case at bar, Salvo testified at trial that she had been asleep in bed when she heard her name and awoke. She saw Hill walk in the door, and he asked, "Where's the pills? Where's the money?" According to Salvo, Hill grabbed her and threw her down. When she "got up and went toward him," Hill threw her on the bed, grabbed Dillard's twelve-gauge shotgun propped in the bedroom corner, pointed the gun at her, and pulled the trigger. She heard the click, but the gun did not fire. Salvo stated that Dillard then entered the room. Hill pointed the shotgun at Dillard, and Dillard fired a shot. Salvo said that she heard two shots, but she did not know who had been shot. Salvo testified that Hill pushed her backward and jumped out the window. She stated that she and Dillard went into the living room, where she saw "a lady" who asked, "Is he still in there?" Salvo responded, "No. Get out of here." She then called the police.
Here, Salvo's testimony provides substantial evidence to support Hill's conviction. Her testimony reveals that Hill entered and remained in the bedroom and demanded money and pills. She testified that Hill picked up Dillard's shotgun and pointed it at her. According to Salvo, Hill pulled the trigger, and she heard a click. This testimony supports the elements of aggravated residential burglary because Hill (1) remained unlawfully in Salvo's bedroom with the purpose of committing an offense punishable by imprisonment (2) while armed with a deadly weapon (3) attempting to inflict serious bodily harm on Salvo. Thus, we hold that the circuit court did not err in denying Hill's motion for directed verdict.
III. Character and Reputation Evidence
For the second point on appeal, Hill argues that the circuit court erred in sustaining the State's objection to the admission *487 of evidence from other witnesses about Dillard's character and reputation for engaging in sexual assaults. Hill asserts that this testimony should have been admissible pursuant to Rule 401 and Rule 405 of the Arkansas Rules of Evidence, because it was relevant to corroborate Wright's testimony at trial.
During an in camera proceeding before trial, defense counsel stated that Hill's defense was that Dillard and Hill's girlfriend, Wright, had a relationship during which she periodically bought pills from him. Defense counsel claimed that he assaulted her the night of the offense, and that Hill "heard her scream and went in." Defense counsel sought to admit the testimony of other women to show that Dillard "would use that [time] as an opportunity to assault young women." The circuit court stated, "I think Ms. Wright can testify as to what she says occurred the night she went into the house. We're not going to bring all these other folks in here to testify about that." The circuit court further ruled that Wright could testify about what had occurred the night of the offense and stated that Hill could proffer the "other witnesses at some point during the proceedings today."
At trial, testifying for the defense, Wright stated that she and Hill went to Dillard's residence to buy some pills on the night of the offense. She stated that she frequently bought pills from Dillard and would often resell the pills and turn a profit. Wright testified,
We were sitting on the couch and he kind of forced hisself [sic] over on me and started fondling like my crouch [sic] and my breast and I just started screaming and tell him get to off me [sic] and that's when Johnny [Hill] come in and we-I-when Johnny [Hill] come to the right side where I was and Cle pulled a gun out and it was in my face and I run around the back side of the-over the couch, stepped along the couch and went around to the left side and he started firing the gun and Jonathan ran into the bedroom that was right there to the right and he kept firing the gun and I-I didn't see Jonathan after that.
Defense counsel later proffered the testimony of two witnesses who allegedly would corroborate Wright's testimony. Defense counsel stated,
Your Honor, the defense would have called Megan Schwartz. If called to testify, she would testify that within a month or two before this event happened, she also would seek Cle Dillard to buy drugs and that the last time she went out there to his house he also sexually accosted her in exchange for the drugs rather than money and that she was able to get away from him herself but she used mace to spray him and ran from him through the front door and ran and got in the car with a friend waiting on her and got away. We would proffer that as evidence of corroboration of what happened out there that evening.
....
Oh, and we would have also proffered the testimony of Amanda West who would have testified similar to Megan Schwartz. She would have testified that she knew Cle Dillard and also knew of his reputation as being a drug dealer and a lecherous old man who attacked women and-and knew a woman who lived out there with him, that she went out there one time to see this woman who lived there and [the] way Mr. Dillard treated her and what their relationship was for pills.
So we would have had those two witnesses to testify and corroborate the story.
At that time, the circuit court stated, "All right, sir. Thank you very much. We've concluded the proffer and we will stand in *488 recess until the jury returns with their verdict."
Evidence of other crimes, wrongs, or acts are admissible for proof of motive, opportunity, intent, preparation, knowledge, identity, or absence of mistake or accident. Ark. R. Evid. 404(b). Specific instances of conduct are admissible only when the character or a trait of character of a person is an essential element of a charge, claim, or defense. Ark. R. Evid. 405(b). Here, any proffered witness testimony alleging that Dillard acted in conformity with his alleged reputation of trading sex for drugs is barred by Rule 404(b). Additionally, the evidence is barred by Rule 405(b). Although the proffered witness testimony would have provided evidence of specific instances of conduct to show the reason that Hill entered the home, it would not have provided specific instances to show the reason that Hill entered or remained unlawfully in Salvo's bedroom. Thus, this proffered witness testimony would not have supported an essential element of the aggravated-residential-burglary charge or his general-denial defense. For these reasons, we hold that the circuit court did not abuse its discretion in refusing to allow this witness testimony.
IV. Cell Phone
For the third point on appeal, Hill contends that the circuit court abused its discretion in admitting several text messages from his cell phone. He also contends that the circuit court erred in admitting testimony concerning the meaning of certain phrases contained in the text messages.
Rule 401 of the Arkansas Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Arkansas Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Ark. R. Evid. 403.
At trial, the circuit court admitted some of Hill's text messages during the testimony of Billy Don Kennedy, a narcotics investigator. The text messages included the following:
"I'm going to pull a Jack move tonight for about 90 roxy 30's and close to 60 K-4's."
"Can't talk right now ... I'm creepen through the woods ... I'll hit you up when I'm thrue with this ok I LOVE YOU BABY AND I'M MISSING YOU LIKE CRAZY! ! ! ! ! ! ! ! ! !"
"Ok baby I will ... I promise you! ! ! I'm gonna be ok so don't worry ... but if something does ever happen to me just KNOW and REMEMBER forever that you have my heart and ALWAYS have from day one and that I was ALWAYS on your side and willing to do anything for you ... because I love you so much! ! ! !
"I went to pay sale tax on my car ... I thought it was $590.... WRONG! ! More like $1017 ... I went off and walked out n went straight to dealership and got a extension ... gonna try to get the contract restructured and include the sale tax in my monthly payments? ? ? ?
"I'm sorry baby my phone been dead and I just got home ... I feel bad after reading your message! ! ! I've missed you like crazy all day ... I had to drive out of town to go pick up another pair of skates so I'm straight now! ! ! I hope to see you
again soon? ? I've got to hustle hard these next two weeks and save *489 $1117 to pay taxes and at least $850 more to keep my business afloat! ! ! ! !
The circuit court ruled that these text messages
are up to and including the time of the event which gave rise to these charges. They reference jack moves and roxy's and things-and all conclude about the time of the event that gave rise to these charges. I think that [the text messages] are relevant and will be admittable [sic] at this point.
Here, the circuit court ruled that the text messages were admissible because they were close in time to the offense, and they corroborated Salvo's testimony that Hill entered the premises and demanded pills and money, thereby establishing his motive for the crime. We agree with the circuit court's conclusion that the text messages were relevant for purposes of corroborating the victim's testimony and were close in time to the offense. Accordingly, we hold that the circuit court did not abuse its discretion in admitting these text messages from Hill's cell phone.
Further, Hill argues that Investigator Kennedy lacked the expertise to comment on the meaning of the slang terms for the drugs listed in the text messages. The officer testified that "roxy 30's" and "K-4's" referred to opioid-based narcotics. He testified that a "jack move" meant "to steal something or to rob something." He also testified that "creepen" meant "sneaking or creeping around about to maybe to do a jack move on somebody." At trial, Hill objected that the officer's testimony was purely speculative, and the circuit court ruled that the police officer had "indicated some measure of experience with this, and I'm going to allow him to testify."
Arkansas Rule of Evidence Rule 701 permits opinion testimony of a lay witness when the opinions are rationally based on the perception of the witness and are helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. See Salley v. State , 303 Ark. 278, 796 S.W.2d 335 (1990). Rule 701 is not a rule against opinions but is a rule that conditionally favors them. Moore v. State , 323 Ark. 529, 915 S.W.2d 284 (1996).
Here, Investigator Kennedy's testimony meets the requirements of Rule 701. We cannot say that the circuit court abused its discretion in allowing the officer to give his lay-opinion testimony about the drug terminology in Hill's text messages because the circuit court determined that the officer possessed some experience in that area. We affirm the circuit court's ruling.
V. Officer's Statement
For the final point on appeal, Hill argues that the circuit court abused its discretion in denying Hill an opportunity to cross-examine Officer Woodward with a prior inconsistent statement. Woodward testified that he did not attempt to obtain a DNA sample from the shotgun, yet he allegedly made a prior statement to Wright that police officers had obtained DNA from the shotgun and that it would prove whether Hill had handled the shotgun. Hill claims that he should have been allowed to cross-examine Woodward with the prior inconsistent statement that he had obtained a DNA sample from the shotgun. The State responds that the circuit court did not abuse its discretion by limiting such impeachment evidence arising from the investigating officer's efforts to induce an admission by a witness. The State also contends that Hill cannot show prejudice from such a limitation.
The relevant facts are as follows. At trial, on cross-examination, Woodward admitted that he had not taken a DNA sample from the shotgun. Defense counsel stated, "[T]hat's not what you told Stacy Wright when you took her interview; is *490 it?" The State objected, and the circuit court sustained the objection. On redirect examination, the officer testified that "DNA on the firearm is what we call touch DNA.... [I]t's left behind by skin cells, dead skin cells. That's different from DNA that's contained in blood." Woodward stated that, based on his experience, he had "very very little success with touch DNA." Defense counsel moved to impeach Woodward with a prior inconsistent statement that the officer made to Wright during the investigation when he stated that officers had obtained DNA on the shotgun. The circuit court denied Hill's motion to use the prior inconsistent statement to impeach the officer, stating, "I think that he's testified he didn't find any of that. If [Wright] wants to try to testify to that, that'd be up [to] her, but we're not going to go into that with him."
When Wright testified, she discussed her conversation with Woodward. During direct examination, the following colloquy occurred:
STATE : You responded to Detective Woodward on a question concerning DNA on the shotgun. Do you recall what that was?
WRIGHT : Yes.
STATE : And what was it?
WRIGHT : It was just, "Good. That'll prove that there wasn't-he wasn't-had-that he didn't have a gun."
We conclude that Hill's argument lacks merit. The jury heard Woodward's alleged inconsistent statement through Wright's testimony. This court has stated that a defendant cannot complain about receiving the relief he or she requested. See, e.g. , Wyles v. State , 357 Ark. 530, 182 S.W.3d 142 (2004). For this reason, we affirm the circuit court's ruling on this point.
VI. Rule 4-3(i)
In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found.
Affirmed.
Hart, J., dissents.
Josephine Linker Hart, Justice, Dissenting.
I agree that the circuit court clearly erred and abused its discretion in refusing to allow Mr. Hill to impeach Officer Woodward with a prior inconsistent statement. However, I disagree that Stacy Wright's testimony in Mr. Hill's case-in-chief concerning her response to Officer Woodward's prior inconsistent statement removed the prejudice. Justice can only be achieved by the proper application of our rules and procedures. The failure by the circuit court to allow Mr. Hill the opportunity to conduct a full cross-examination of Officer Woodward prevented Mr. Hill from being able to put on a complete and effective defense. Mr. Hill deserves a new trial.
It is not disputed that Officer Woodward's statement to Stacy Wright that he had recovered DNA from the shotgun is inconsistent with his trial testimony that no DNA was recovered because his department had "very, very little success" recovering and exploiting "touch DNA." Furthermore, it is also not disputed that this testimony was important to the State's case. The State needed it because it explains away a weakness in the State's case-no forensic evidence placing the shotgun in Mr. Hill's hands. Officer Woodward was thus allowed to minimize the lack of corroboration of Donna Salvo's fairly incredible claims upon which Mr. Hill's conviction and life sentence rest. According to Ms. Salvo's testimony, Mr. Hill committed aggravated burglary by finding and picking up the shotgun that Ms. Salvo kept in the house for her protection (and presumably *491 for protection of the drug premises where she resided)-a weapon that Mr. Hill had no way of knowing was there-to attempt to rob Ms. Salvo of drugs and money, while the other alleged "victim," opioid peddler Cornenia Dillard, shot at him. Clearly Officer Woodward's prior-inconsistent statement should have been admitted into evidence pursuant to 613 of the Arkansas Rules of Evidence. Thus, the circuit court clearly abused its discretion by refusing to allow Mr. Hill to impeach Officer Woodward with this prior-inconsistent statement. The majority is simply wrong when it holds that Mr. Hill suffered no prejudice from this erroneous evidentiary ruling because "the jury heard Woodward's alleged inconsistent statement through Wright's testimony." It is true that Rule 613 makes prior-inconsistent statements admissible-save for admissions by party opponents, almost every out-of-court statement is inadmissible hearsay. However, Rule 613 does much more. Rule 613(a) specifies when a prior inconsistent statement may be used in a trial-when "examining" the witness who made the statement. Accordingly, under the plain wording of Rule 613, Officer Woodward's prior inconsistent statement-which would otherwise be hearsay-was admissible only to impeach Officer Woodward while he was on the witness stand. Thus, when the circuit court sustained the State's objection and denied Mr. Hill the opportunity to confront Officer Woodward with his statement, the circuit court's error was complete.
Furthermore, the majority's claims that "the jury heard Woodward's alleged statement though Wright's testimony" is not true. The following excerpt from the transcript is illuminating:
DEFENSE COUNSEL : When you were interviewed by Detective Woodward were you repeatedly-was DNA mentioned?
MS. WRIGHT : Yes ma'am.
DEFENSE COUNSEL : In what way?
MS. WRIGHT : He said there would be DNA-
THE STATE : Objection. This is hearsay.
THE COURT : I'd sustain that objection.
DEFENSE COUNSEL : You responded to Detective Woodward on a question concerning DNA on the shotgun. Do you recall what that was?
MS. WRIGHT : Yes.
DEFENSE COUNSEL : And what was it?
MS. WRIGHT : It was just, "Good. That'll prove that there wasn't-he wasn't-had-that he didn't have a gun."
This portion of the transcript proves conclusively that the jury never actually "heard" Officer Woodward's prior inconsistent statement-the circuit court sustained the State's hearsay objection.
It is noteworthy that Rule 613(b) prohibited Mr. Hill from introducing Officer Woodward's prior-inconsistent statement through Ms. Wright's testimony because it would be extrinsic evidence of the statement. Rule 613(b) states:
(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).
Officer Woodward was never actually confronted with his prior-inconsistent statement; consequently, he had no "opportunity to explain or deny" it. Thus, to the extent that even traces of Officer *492 Woodward's prior-inconsistent statement could be detected by the jury, it was stripped of its value as impeachment evidence.
Our system of justice depends on adversary proceedings in which both sides must be allowed to test the proof in accordance with the rules of evidence. When one side is prevented from fully presenting its case, we cannot have confidence in the outcome of the trial. Mr. Hill was denied a fair trial because he was not allowed to test the State's evidence as provided for by Rule 613. He deserves a new trial.
I respectfully dissent.