Butler said that when they arrived at the cemetery, he and Scroggins got out of the car, started walking to the cemetery, and hopped the fence. At that time, appellant followed Butler's directions to "[j]ust drive down the road." Butler explained that after Scroggins had begun asking him questions, he turned around, drew the gun, asked him about the stolen drugs, and shot Scroggins two times after he had received no answer. The first shot misfired, but then Butler shot Scroggins in the head. He took a pill bottle containing marijuana and pills out of Scroggins's pocket.
Butler returned to the road where appellant picked him up approximately ten minutes after appellant had left him there, and Butler testified that appellant asked him what had happened. Butler stated that he told appellant that he thought he had killed Scroggins. Butler explained that appellant "started freaking out," which made him panic, so he told her that Scroggins was not dead. On the way home, Butler showed appellant the pill bottle he had taken from Scroggins. Without further discussion, the pair went to their home, and Butler put the gun away.
Captain Bob King of the Boone County Sheriff's Department testified about the investigation. He explained that they identified Butler as the person Scroggins last had contact with via Facebook messenger records. That led to officers interviewing Butler and a few months later interviewing appellant, whose stories were similar but contained some conflicting information and timing discrepancies. Appellant acknowledged that she could not fill in more details *925 because she had been "pretty strung out on meth," was confused about when and where she had met with Scroggins and Butler, and did not know what had happened to Scroggins that night. She tried to establish that she was at her grandmother's residence on the evening in question.
Appellant subsequently was interviewed by Special Agent Buster Rink of the Arkansas State Police, to whom Butler had previously confessed. According to Rink's testimony and the transcript, appellant's memory of the events was more clear during the subsequent interview, but she continued to claim that her only involvement was to drive the car. She claimed that Butler did not tell her that he was going to beat up Scroggins or that he had a gun. She acknowledged that she did not go to the police after Butler told her that he was afraid he had killed Scroggins because she was scared. Appellant also acknowledged that Scroggins had left his cell phone in her car that evening because he thought he would be coming back to it.
Special Agent David Small of the Arkansas State Police also testified regarding the discovery of Scroggins's remains and a spent .22-caliber casing, which were recovered after an interview with Butler.
At the close of the State's case-in-chief, appellant moved for a directed verdict, arguing that the State had failed to present the circuit court with any type of corroboration, which would be independent of Butler's testimony, to sustain the aggravated-robbery charge against appellant. Counsel argued that the testimony of the accomplice, Butler, was uncorroborated and that a prima facie case was not made by the State. Counsel said the State had not given any distinct and independent evidence that would prove anything other than that appellant had been merely present. The circuit court denied appellant's motion for a directed verdict, finding that there was substantial corroboration of appellant's participation by her own statement to police independent of Butler's testimony.
Appellant did not present any evidence in her defense. At the close of appellant's case, counsel renewed the motion for a directed verdict, arguing that the State had failed to present sufficient proof of corroboration independent of Butler's testimony. The circuit court again denied appellant's motion.
Appellant was found guilty by the jury of aggravated robbery and sentenced to thirteen years in the Arkansas Department of Correction pursuant to a judgment and commitment order entered on September 7, 2017. Appellant filed a notice of appeal on September 22, 2017.
II. Standard of Review
A motion for directed verdict is a challenge to the sufficiency of the evidence. Hill v. State , 2018 Ark. 194, 546 S.W.3d 483. In a challenge to the sufficiency of the evidence, this court considers only the evidence that supports the conviction in the light most favorable to the State and determines whether the verdict is supported by substantial evidence. Id. Substantial evidence is evidence that is forceful enough to compel a conclusion beyond suspicion or conjecture. Id. Circumstantial evidence may constitute substantial evidence to support a conviction if it excludes every other reasonable hypothesis other than the guilt of the accused; that determination is a question of fact for the finder of fact. Wilson v. State , 2018 Ark. App. 371, 554 S.W.3d 279.
Weighing the evidence, reconciling conflicts in the testimony, and assessing credibility are all matters exclusively for the trier of fact. Lovelace v. State , 2017 Ark. App. 146, at 6, 516 S.W.3d 300, 304. A *926 jury may accept or reject any part of a witness's testimony, and its conclusion regarding credibility is binding on the appellate court. Id. at 6-7, 516 S.W.3d at 304.
III. Sufficiency of Evidence Supporting Appellant's Conviction of Aggravated Robbery
Appellant argues that the circuit court erred in denying her motions for a directed verdict on the aggravated robbery charge under Arkansas Code Annotated section 5-12-103(a) (Repl. 2013) because her criminal liability was based entirely on the accomplice testimony of Butler and her written and oral statements made to law enforcement officers. Appellant contends that evidence does not constitute substantial evidence to support her conviction.
With respect to corroborating testimony, this court has held that
when accomplice testimony is considered in reaching a verdict, Arkansas law provides that a person cannot be convicted based upon the testimony of an accomplice "unless corroborated by other evidence tending to connect the defendant ... with the commission of the offense." Ark. Code Ann. § 16-89-111(e)(1)(A) (Repl. 2005). Corroborating evidence is not sufficient if it merely shows that the offense was committed and the circumstances thereof. The corroboration must be sufficient, standing alone, to establish the commission of the offense and to connect the defendant with it. Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. The test is whether, if the testimony of the accomplice were completely eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. Martin v. State , 346 Ark. 198, 57 S.W.3d 136 (2001).
Riley v. State , 2009 Ark. App. 613, at 4, 343 S.W.3d 327, 331.
A person is criminally liable for the conduct of another person when he or she is the accomplice of another person in the commission of an offense. Ark. Code Ann. § 5-2-403 (Repl. 2013). An accomplice is defined as follows:
(a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, the person:
(1) Solicits, advises, encourages, or coerces the other person to commit it; or
(2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or
(3) Having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.
(b) When causing a particular result is an element of an offense, a person is an accomplice in the commission of that offense if, acting with respect to that result with the kind of culpability sufficient for the commission of the offense he:
(1) Solicits, advises, encourages, or coerces the other person to engage in the conduct causing the result; or
(2) Aids, agrees to aid, or attempts to aid the other person in planning or engaging in the conduct causing the result; or
(3) Having a legal duty to prevent the conduct causing the result, fails to make a proper effort to prevent the conduct causing the particular result.
Ark. Code Ann. § 5-2-403. Appellant submits that the State failed to make a prima facie case against appellant as to aggravated robbery.
Appellant argues that the only testimony that directly implicates her in the offense *927 as an accomplice is the previously described testimony of accomplice Butler. Appellant claims that Butler's testimony about telling her that he was going to beat up Scroggins and get his stuff back is so unbelievable that reasonable minds could not differ thereon; particularly considering Butler's answers on cross-examination and his agreement to testify against appellant as part of his plea agreement with the State. Barnes v. State , 258 Ark. 565, 528 S.W.2d 370 (1975).
Moreover, appellant maintains that if Butler's testimony as an accomplice was removed, the remaining evidence merely places appellant with Butler and Scroggins on June 27, 2016. Appellant submits that she had no duty to take any action before or after Butler murdered Scroggins. She claims that the evidence presented at trial was that she did not know of Butler's plan to rob or kill Scroggins before the crimes were committed.
Appellant maintains that even in the light most favorable to the State, the evidence is sufficient only to place her at the cemetery where Scroggins had been killed before and after Butler murdered him. The jury was instructed that "mere presence" is not enough:
Mere presence, acquiescence, silence, or knowledge that a crime is being committed, in the absence of a legal duty to act, is not sufficient to make one an accomplice. Therefore, if you find that [appellant] was only present while a crime was being committed and did not have a legal duty to act, then she is not an accomplice.
AMI Crim. 2d 404; see also West v. State , 2017 Ark. App. 416, 530 S.W.3d 355.
Appellant argues that she meets none of the requirements of an accomplice under Ark. Code Ann. § 5-2-403, claiming that no evidence was presented that she aided, agreed to aid, or attempted to aid Butler in robbing or killing Scroggins. She maintains that she was simply present before and after Butler killed Scroggins and that she drove the vehicle to meet up with a guy who owed Butler money.
Mere presence, acquiescence, or silence, in the absence of a duty to act, is not enough to create accomplice liability; the knowledge that a crime is being committed or is about to be committed does not create an accomplice. West , supra. Neither is the mere failure to inform the officers of the law when one has learned of the commission of a crime. Hutcheson v. State , 92 Ark. App. 307, 213 S.W.3d 25 (2005). Absent a legal duty, presence, acquiescence, silence, knowledge, or failure to inform an officer of the law is not sufficient to make one an accomplice. Id. Appellant maintains that the alleged corroborative evidence is not substantial nor can her involvement as an accomplice in this matter stand without resorting to conjecture and speculation. Turner v. State , 103 Ark. App. 248, 288 S.W.3d 669 (2008).
Alternatively, appellant alleges that if this court holds that she is an accomplice, she can be held liable for only the degree of the offense that is consistent with her own mental culpability or her own accountability for an aggravating fact or circumstance. See AMI Crim. 2d 405; Ark. Code Ann. § 5-2-406. Appellant submits that there was no evidence presented at trial that indicated she knew Butler had a gun or was planning to use a gun to take anything from Scroggins. Considering Butler's testimony in which he testified that he told appellant before picking up Scroggins that he was going to beat Scroggins up and get his stuff back, then the only elements of an offense that are met and the only culpable mental state proved is that of a simple robbery.
*928 Robbery is defined in Arkansas Code Annotated section 5-12-102(a) (Repl. 2013):
A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person.
Appellant claims that if the jury accepted Butler's testimony at trial-without resorting to speculation or conjecture-the only facts presented were that appellant knew a robbery was going to take place and that Butler was going to beat up Scroggins and get his stuff back. Appellant maintains that because there was no robbery instruction offered or given to the jury, this court must conclude that there was insufficient evidence presented to convict appellant of the aggravated-robbery charged in the felony information.
We disagree and hold that the circuit court did not err by denying appellant's motion for directed verdict. A defendant is an accomplice so long as he or she renders the requisite aid or encouragement to a principal irrespective of whether the defendant directly commits the crime. Atkinson v. State , 347 Ark. 336, 347, 64 S.W.3d 259, 266 (2002). The accomplice-corroboration statute, enacted in 1883, remains virtually unchanged since its enactment:
(A) A conviction ... may not be had in any case of felony upon the testimony of an accomplice ... unless corroborated by other evidence tending to connect the defendant ... with the commission of the offense.
(B) The corroboration ... is not sufficient if it merely shows that the offense was committed and the circumstances of the offense.
Ark. Code Ann. § 16-89-111(e)(1) (Supp. 2017). In King v. State , 254 Ark. 509, 494 S.W.2d 476 (1973), the Arkansas Supreme Court held as follows regarding the accomplice-corroboration statute:
By its own language, the statute only requires that there be corroboration by evidence tending to connect the defendant with the commission of the offense and that this evidence go beyond a showing that the crime was committed and the circumstances thereof. We have, therefore, consistently held that the corroborating evidence need not be sufficient in and of itself to sustain a conviction, but it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime.
Id. at 510, 494 S.W.2d at 477-78 (citations omitted).
Our supreme court has further held that it is not necessary that an accomplice's testimony be corroborated on every fact or detail. MacKool v. State , 365 Ark. 416, 231 S.W.3d 676 (2006). A defendant cannot disclaim accomplice liability simply because he or she did not personally take part in every act making up the commission of a criminal offense as a whole. Id. at 435, 231 S.W.3d at 692. Governing precedent does not require that corroborating evidence, by itself, be sufficient to sustain a conviction. Taylor v. State , 2011 Ark. 10, at 11-12, 370 S.W.3d 503, 509.
It is well settled that the acts, conduct, and declarations of a defendant before or after the crime may be considered as corroborating evidence. MacKool , 365 Ark. 416, at 433, 231 S.W.3d at 690-91. Likewise, a defendant's possession of missing property belonging to a crime victim may be considered corroborating evidence of guilt. See Lipsmeyer v. State , 16 Ark. App. 14, 695 S.W.2d 848 (1985). Furthermore, association with a *929 person involved in the crime in a manner suggestive of joint participation is a relevant factor in determining the connection of an accomplice with the crime. Passley v. State , 323 Ark. 301, 915 S.W.2d 248 (1996).
We hold that the corroborating evidence presented at trial established more than appellant's being "simply present" during the commission of the crime. Substantial corroborating evidence connects appellant to the crime, including corroboration through a series of evolving recorded statements she gave to the police.
Butler explained that before they left her vehicle on the day in question, he told appellant they were going to pick up Scroggins and that Butler intended to beat him up and take anything that Scroggins had on him. Despite this knowledge of Butler's purpose, appellant still agreed to drive him. Butler's testimony that he told appellant of his intention to beat Scroggins up and take everything he had before appellant drove Butler and Scroggins to the cemetery was consistent throughout the trial and also in his statements to police. His statements were made before he entered a plea bargain to testify against appellant.
Substantial corroborating evidence connecting appellant to the crime includes two recorded interviews appellant gave to the police, along with her written statement, all of which were admitted at trial. Captain King testified that in her first interview with the police on October 3, 2016, appellant denied having any contact with Scroggins on the date of his disappearance or any knowledge of Scroggins's whereabouts or what had happened to him.
Appellant's version of events was significantly different in the second recorded interview she gave the following day on October 4, 2016. Although she initially stood by her previous account of having only one recollection of meeting Scroggins-when she picked him up near Walmart and took him to the Scenic Seven Motel to buy drugs-soon after being confronted with a question about what had happened at the cemetery, appellant admitted driving the car, picking Scroggins up, letting the two men out at the cemetery, and then driving up and down the road a few times until she picked up Butler, who was alone.
In that second interview, appellant's version of events was consistent with Butler's testimony that while appellant was driving them to the cemetery, Butler told Scroggins he was going to help Butler collect money from someone else who lived near there. Appellant admitted to officers that she believed Butler was "making up more of a story" about needing Scroggins's help to collect money from someone who lived near the cemetery.
Appellant's story was consistent with Butler's testimony that when she stopped to let the two men out at the cemetery, Butler told her to drive on down the road, and she did. Likewise, appellant's story about what Butler told her had happened to Scroggins also was consistent with Butler's accomplice testimony. After the incident occurred, appellant admitted to the police interviewer that she had seen Scroggins's cell phone, which had been left in her car. Appellant told police of the two places in her home where a bag of phones might be located and that she also might have disposed of the Scroggins's phone in Butler's belongings that she had given to his mother after his arrest.
Viewed in the light most favorable to the State, a reasonable juror could have found from the corroborating evidence that appellant was guilty of being an accomplice to the aggravated robbery of Scroggins. Independent of Butler's accomplice testimony, evidence obtained by the police and *930 presented by the State at trial established that Scroggins had been fatally shot near the cemetery where both his body and the bullets were found. The bullets found at the scene were the same caliber as one of the guns Butler had recently stolen from appellant's family. In addition to Butler's confession, Facebook postings indicated that Butler was the last person to communicate with Scroggins.
Appellant's recorded statement revealed that on June 27, 2016, she rendered the requisite aid to Butler to commit the crime by transporting Butler and his intended victim to the scene of the crime where Butler robbed and fatally shot Scroggins. Appellant acknowledged transporting Butler away from the scene, knowing that he had severely injured or killed Scroggins, and she admitted possibly retaining or disposing of the Scroggins's cell phone after the incident. We hold that appellant's possession of the Scroggins's property, her evasive or conflicting statements to the police, and her other acts and conduct could be viewed by the jury as corroborating evidence.
Regarding appellant's additional argument that there was insufficient evidence to convict her for aggravated robbery because she was unware that Butler had a gun or was going to use a gun to rob Scroggins-the State notes that this specific argument was not presented to the circuit court in a directed-verdict motion and should not be considered on appeal. A directed-verdict motion requires the movant to apprise the circuit court of the specific basis on which the motion is made. Rounsaville v. State , 372 Ark. 252, 256, 273 S.W.3d 486, 490 (2008). Arguments not raised at trial will not be addressed for the first time on appeal, and a party cannot change the grounds for an objection on appeal but is bound by the scope and nature of the objections and arguments presented at trial. Id.
Arkansas law makes no distinction between the criminal liability of a principal and an accomplice. Starling v. State , 2015 Ark. App. 429, at 4, 468 S.W.3d 294, 296 ; see Ark. Code Ann. § 5-2-402(2). Appellant's argument fails to acknowledge that death was inflicted on Scroggins during the commission of a robbery. See Ark. Code Ann. § 5-12-103(a)(3). Because the evidence established that appellant participated or aided in the commission of an aggravated robbery in which death was inflicted on the victim-regardless of her knowledge of whether a gun might be used in the commission of the offense-Scroggins's death made the offense an aggravated robbery; accordingly, appellant was an accomplice to that crime.
Affirmed.
Abramson and Murphy, JJ., agree.