WAYMOND M. BROWN, Judge
A Garland County jury found appellant Lonnie Davidson guilty of commercial burglary and theft of property, valued at more than $1000 but less than $5000, in case No. 26CR-16-291 and sentenced him to an aggregate term of five years' imprisonment to run concurrent to the sentence he received in case No. 26CR-16-293. Appellant was also fined $10,000. In case No. 26CR-16-293, appellant was found guilty of aggravated robbery and residential burglary and was sentenced to an aggregate term of forty years' imprisonment.[1] Appellant *153 only challenges his aggravated-robbery conviction on appeal, contending that the evidence was insufficient to support the conviction. We affirm.[2]
Appellant was charged with committing aggravated robbery against Mr. James Krauss on April 12, 2016. Appellant's jury trial took place May 10-11, 2017. Mr. Krauss testified that he was living at 130 Alysonview Street in Hot Springs on April 12, 2016. He stated that he heard a noise outside in the early morning hours on that date, which awoke him. He testified that he got up and walked to his back window, which overlooks his back deck, anticipating seeing a raccoon or other animal. He further testified:
I walked up to the window to see if I could see anything and I heard another rustling, but it was down lower. I turned the lights on to the patio, and the outside lights and stood there for a few minutes and didn't see anything. I opened the door, walked to the edge of the patio, and that's when I noticed the four-wheeler was out in the middle of the yard.
When I went to sleep the night before it was on the slab underneath the patio. I was trying to figure out why my four-wheeler was out in the middle of the yard. I went to the edge of the stairway there and I was trying to figure out if it rolled off. I walked to the landing before the cement slab and noticed there was a row of firewood that had been knocked over and that's where the four-wheeler went off. I continued to walk down on to the slab and looked underneath the patio and didn't really see anything. I turned around and I saw the Defendant.
The defendant was wearing a dark jacket and a baseball cap. He told me to get back up in the house and I was about half-startled trying to figure out what was going on and I hesitated trying to figure out if he was a homeless person or something and right then is when he pulled the gun up on me.
He pointed the gun at me and he was motioning upstairs and he said, "Get your F-ing ass up there or I'll blow your head off." I went back up the stairs. I kept an eye behind me and he followed me up the stairs and when I got to the middle landing again, I looked back and he was about two steps behind me. I kind of went a little faster and got up and went to the door and when I got to the door, I turned back and he was on the top step of the stairway there and still waving a gun at me and the whole time telling me to get in the house, get in the house. And so at that time my wife had gotten up by that time wanting to know what was going on and I yelled at her, I said, "Get my gun! Get my gun!" just try to scare him away. And I went in and locked the door.
Mr. Krauss stated that he did not have a gun in the house but was attempting to "bluff" appellant. He said that his wife never came out of the house and that he put her in a safe room in the middle bathroom as soon as he got back inside. He testified that he looked for his cell phone, which was in the kitchen. He stated that as he walked through the living room to reach the kitchen, he could hear appellant yelling several things, including, "You better stay in the house or I'll come and get both of you." He said that he retrieved his phone, walked into the hallway, and dialed 911. He stated that the police arrived quickly, but that he was unsure if appellant was still on the premises at that time. He testified that he was missing four *154 cases of tools that appellant took after he kicked his basement door in. He stated that all but one of the cases were recovered. He said that he was able to identify appellant as the person who threatened him later on that morning. He also positively identified appellant at the trial.
On cross-examination, Mr. Krauss stated that he recalled telling Officer Chris Savage that he saw what appeared to be a black handgun and that appellant told him to go back upstairs or he would "blow [his] head off." He said that he also recalled speaking to Detective Scott Lampinen a few days later and that he was "totally convinced it was a gun" that appellant pointed at him. He said that he guessed that it "could have been anything" but he remembered seeing the round barrel of a gun. He stated that appellant was holding it with two hands, one hand on each side of the gun.
Deborah Krauss stated that she is James's wife. She said that she woke up shortly after her husband on the morning of April 12, 2016, and wondered what was going on. She testified,
I could see him standing on the landing and he said, "Just stay back." And I said, "What's going on? I heard something." I kept standing in the bedroom and the next thing I know is I hear Jim coming up the stairs and saying, "He's got a gun! He's got a gun! Run!" and I just stood there, kind of frozen and I didn't know which direction to go. Jim shoved me into a bathroom and locked the door and I could hear him frantically running through the house and then I heard him on the phone to 911. I stayed in the bathroom until the police arrived.
On cross-examination, she stated that she never stepped outside of the house. She admitted that she did not hear any communication between appellant and her husband. She stated that she heard her husband frantically tell her to run and to get his gun, which she knew her husband did not have. She said that based on this, she figured "somebody was after him." She stated that she saw a figure a couple of steps behind her husband, but that she only could see the top of his head. She explained, "It happened so quick. I was so scared. It was dark. I just woke up. It's 5:00 in the morning."
Detective Lampinen testified that on April 12, 2016, he went to the area near the Krausses' residence to attempt to locate the suspect. He stated that he first saw a suspicious person near 105 Millbranch Court. He said that when he made contact, the person took off running and that he eventually chased the person to 540 Ridgeway. Appellant was subsequently apprehended inside the residence at that address. Detective Lampinen stated that appellant was able to tell officers where the Krausses' items were located. He said that they were able to recover two sets of tools belonging to the Krausses and that a third set of tools was turned over to the police by a local resident. The fourth set of tools was never recovered.
On cross-examination, Detective Lampinen stated that no gun was ever retrieved during the investigation. However, he stated that he believed that there were "possible flashlights" recovered. He testified that he informed appellant of Mr. Krauss's claim that appellant had a gun, but that appellant claimed that it was only a flashlight. Detective Lampinen stated that on the morning of the robbery, Mr. Krauss was "definitive that it was a gun" appellant had. He stated that in a subsequent interview, Mr. Krauss stated that it could have been a flashlight, but that he believed it was a handgun.
Detective Kenneth May testified that he assisted in the aggravated-robbery investigation on April 12, 2016. He also stated *155 that he assisted with the arrest and subsequent questioning of appellant. Appellant's interrogation was videotaped, and the jury was able to view it during Detective May's testimony.
Appellant unsuccessfully moved for a directed verdict at the conclusion of the State's case, arguing, "We feel that the State has failed to prove that he is either, based on the evidence taken as a whole, that he had a deadly weapon[,] or he represented by his words or conduct that he was so armed in the commission of a theft."
Appellant testified that he was frightened when Mr. Krauss came out and "confronted" him. He stated that he just wanted to get away and that he had no intention of harming anyone. He testified that he pointed his flashlight at Mr. Krauss, turned it on, and told Mr. Krauss to "go back up the stairs and go back in the house." He denied ever having a gun or threatening to kill Mr. Krauss.
Appellant renewed his directed-verdict motion at the conclusion of the evidence. The motion was denied. The jury found appellant guilty of aggravated robbery, and appellant was subsequently sentenced to twenty-five years' imprisonment for that charge. The sentencing order was entered on May 16, 2017, and an amended sentencing order was filed on May 25, 2017. An untimely notice of appeal was filed June 22, 2017; however, counsel filed a motion for a belated appeal on December 15, 2017, admitting fault. Counsel had already filed a motion to withdraw as appellant's attorney on December 14, 2017. The supreme court granted both motions on January 11, 2018, and appointed new counsel for appellant. This appeal followed.
A motion for directed verdict is a challenge to the sufficiency of the evidence.[3] In a challenge to the sufficiency of the evidence, this court considers only the evidence that supports the conviction in the light most favorable to the State and determines whether the verdict is supported by substantial evidence.[4] Substantial evidence is evidence that is forceful enough to compel a conclusion beyond suspicion or conjecture.[5] Circumstantial evidence may constitute substantial evidence to support a conviction if it excludes every other reasonable hypothesis other than the guilt of the accused; that determination is a question of fact for the finder of fact.[6] Weighing the evidence, reconciling conflicts in the testimony, and assessing credibility are all matters exclusively for the trier of fact.[7] A jury may accept or reject any part of a witness's testimony, and its conclusion regarding credibility is binding on the appellate court.[8]
Appellant contends that the evidence was insufficient to support his aggravated-robbery conviction. More specifically, appellant maintains that the evidence was "insufficient to prove beyond a reasonable doubt that Appellant employed physical force or threatened to employ physical force upon Mr. and Mrs. Krauss." A person commits robbery if, with the purpose of committing a felony or misdemeanor theft, "the person employs or threatens to immediately employ physical force upon *156 another person."[9] Aggravated robbery occurs if the person committing the robbery is armed with a deadly weapon, represents by word or conduct that he or she is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person.[10]
Here, Mr. Krauss testified that appellant pointed a gun at him and threatened to kill him. Appellant maintains that he did not have a gun, only a flashlight, and that he did not threaten to kill anyone. The jury was presented with conflicting testimony, and it chose to believe Mr. Krauss's version of events. Thus, the evidence, viewed in the light most favorable to the State, showed that while armed with a gun, appellant threatened Mr. Krauss's life. Accordingly, the evidence was sufficient to support appellant's aggravated-robbery conviction.
Affirmed.
Gruber, C.J., and Gladwin, J., agree.

He received twenty-five years' imprisonment for the aggravated-robbery charge and fifteen years' imprisonment for the residential-burglary charge.

This is the second time this case has been before us. We initially ordered a supplemental addendum in Davidson v. State , 2018 Ark. App. 456, 2018 WL 4610592.

Hill v. State , 2018 Ark. 194, 546 S.W.3d 483.

Id.

Id.

Wilson v. State , 2018 Ark. App. 371, 554 S.W.3d 279.

Lovelace v. State , 2017 Ark. App. 146, 516 S.W.3d 300.

Id.

Ark. Code Ann. § 5-12-102(a) (Repl. 2013).

Ark. Code Ann. § 5-12-103(a).